Exhibit 1

**RECEIVED**

COMMONWEALTH OF MASSACHUSETTS
HAMPHIRE COUNTY SUPERIOR COURT

CIVIL ACTION NO. _____

| | |
|---|---|
| JULIAN ROSS, </br>                Plaintiff </br> v. </br> BENCHLING, INC. </br>                Defendant | COMPLAINT AND DEMAND </br> FOR JURY TRIAL |

1. Plaintiff Julian Ross brings this action against Defendant Benchling, Inc. for disability discrimination, failure to accommodate, retaliation, interference with protected leave, and unlawful surveillance and interception of communications in violation of state law. Specifically, Defendant violated: (1) M.G.L. c. 151B, § 4(16) by discriminating against Plaintiff on the basis of disability and failing to provide reasonable accommodations; (2) M.G.L. c. 151B, § 4(4) by retaliating against Plaintiff for engaging in protected activity, including requesting accommodations and medical leave; (3) Massachusetts Paid Family and Medical Leave Act (PFMLA), M.G.L. c. 175M, § 9(d) by terminating Plaintiff in close temporal proximity to his request for protected intermittent medical leave; (4) Massachusetts common law by wrongfully terminating Plaintiff in violation of the public policy protecting employees' rights to medical leave and reasonable accommodation; (5) Massachusetts common law by making and then repudiating material promises of career advancement upon which Plaintiff reasonably relied to his detriment; (6) M.G.L. c. 272, § 99 by unlawfully intercepting and recording Plaintiff's telephone communications without the knowledge or consent of all parties; (7) M.G.L. c. 214, § 1B by unreasonably and substantially interfering with Plaintiff's privacy through undisclosed

monitoring and storage of his communications; and (8) Massachusetts common law by engaging in extreme and outrageous conduct that intentionally or recklessly caused Plaintiff severe emotional distress.

## Jurisdiction

2. This Court has jurisdiction over this matter pursuant to M.G.L. c. 212, § 4, which provides the Superior Court with original jurisdiction over civil actions in which the amount in controversy exceeds $25,000. Venue is proper in this Court because Plaintiff resides in Hampshire County, Massachusetts, and Defendant conducts business and employed Plaintiff in Massachusetts, where many of the acts and omissions giving rise to this action occurred.

## Parties

3. Plaintiff Julian Ross resides in Hampshire County, Massachusetts. At all relevant times, Plaintiff was employed by Defendant and performed work within, and for the benefit of, the Commonwealth of Massachusetts.

4. Defendant Benchling, Inc. is a corporation organized under the laws of the state of Delaware, with its principal place of business at 680 Folsom Street, 8th Floor, San Francisco, CA 94107, and employs over 100 employees. Defendant is registered to do business in Massachusetts and employs more than 100 individuals, qualifying as an "employer" in all statutes related to this action, including the PFMLA, and M.G.L. c. 151B.

## Factual Allegations

5. Plaintiff Julian Ross began employment with Defendant on or about June 21, 2021, in the full-time position of Sales Development Representative ("SDR") at Defendant Benchling, Inc.'s Massachusetts location at 100 Summer Street, 23rd Floor, Boston, Massachusetts 02110, serving enterprise clients across various US and global territories.

6. Defendant Benchling is a cloud-based software platform for biotechnology research and development that provides software tools for the research and development of cutting edge therapeutics and pharmaceuticals. Its clients include multinational pharmaceutical companies and world-class academic institutions.

7. Plaintiff was classified as a non-exempt employee, with an hourly base wage of $31.25 and was also eligible to earn commissions and bonuses related to meeting certain performance metrics. The target annual incentive compensation was set at $30,000.00, with no cap on earnings. Additionally, he was granted incentive stock options (ISOs) as part of his employment contract, alongside a benefits package, as part of his employment agreement.

8. In or around March 2021, Benchling's SDR manager Christian Haas-Kwon personally recruited Plaintiff via LinkedIn.

9. Mr. Haas-Kwon represented to Plaintiff that Benchling was "doubling this year," that there was "lots of room to grow vertically or laterally," and that employment with Benchling offered "awesome perks and benefits," including unlimited PTO, wellness stipends, and advancement opportunities.

10. Beyond these specific assurances, Mr. Haas-Kwon emphasized Benchling's status as a rapidly scaling, venture-capital-backed pre-IPO company, portraying the position as a rare opportunity. He represented that joining Benchling would justify Plaintiff's leaving secure employment and would position him on a long-term trajectory of advancement and exceptional internal mobility.

11. Plaintiff reasonably relied on these representations in agreeing to enter the interview process, advancing through multiple interview rounds, and ultimately accepting employment with Benchling, rather than pursuing other external opportunities available at that time.

12. In January, 2022, Plaintiff notified Defendant of his need to take a medical leave of absence due to disabling health conditions including, but not limited to, depression, anxiety, and severe insomnia. Plaintiff was fully eligible for leave under PFMLA. Defendant approved the leave request, and Plaintiff applied for and was granted paid leave benefits under PFMLA by the Massachusetts Department of Family and Medical Leave (DFML). In connection with his application, Plaintiff provided Defendant with a "Certification of Your Serious Health Condition" form dated February 6, 2022, completed by his health care provider. This form certified Plaintiff's need for continuous medical leave beginning January 24, 2022, and ending April 18, 2022.

13. Upon returning from medical leave on April 18, 2022, Plaintiff was informed that he would be assigned new sales accounts effective May 1, 2022, the start of the second fiscal quarter.

14. Between April 18 and May 1, Defendant barred Plaintiff from resuming core duties, working active accounts or earning commissions. Although Plaintiff had been medically cleared and was fully prepared with a planned return date of April 18, Defendant instructed him to wait until May 1 to regain access to commission-earning responsibilities and resume normal work functions.

15. Shortly after returning to work, Plaintiff informed Defendant that his healthcare provider had advised he may require intermittent medical leave in the future but that no specific dates had been identified. Plaintiff made clear that he would notify Defendant promptly should the need arise.

16. On or about May 11, 2022, Plaintiff formally notified Defendant that his physician had prescribed intermittent leave on an as-needed basis. Plaintiff also provided a written

accommodation request from his healthcare provider recommending continued remote work flexibility to manage his medical conditions. Plaintiff was eligible for such leave under the PFMLA.

17. Defendant approved the remote work accommodation. This occurred during a period in which Defendant was transitioning employees from remote to in-office work. Plaintiff's work-from-home status, although medically justified, distinguished him from many of his peers.

18. In or around July 2022, Defendant held a cross-office Sales Development Representative ("SDR") meeting over Zoom, led by Director of Sales Development Sean Simerly, with SDRs from Boston, San Francisco, and Zurich. The purpose of the meeting was to address widespread employee dissatisfaction with Defendant's return-to-office ("RTO") policies. Unlike most other teams at Benchling, which were subject to a flexible and scarcely enforced three-day in-office expectation, SDRs were uniquely, and for unexplained reasons, required to be physically present in the office at least four days per week, ideally five, according to Mr. Simerly. During the meeting, nearly all of the SDRs expressed frustration with the policy and complained that it was unfair and burdensome compared to the treatment of other departments. Although Plaintiff had already been granted a medical accommodation permitting him to work remotely on a full-time basis, he attended the meeting in solidarity with his colleagues, advocating for broader work-from-home ("WFH") policies consistent with the expectations applied to other teams across the company. Plaintiff reasonably believed that his participation was protected activity in support of workplace fairness. Upon information and belief, Mr. Simerly, who was under pressure to demonstrate strict RTO enforcement to senior executives, including CEO Sajith Wickramasekara, viewed Plaintiff's solidarity and public alignment with the dissenting employees as a challenge to his authority and a source of personal frustration. Another SDR,

Max Eddy, who also had a remote-work medical accommodation but chose not to attend the meeting, was neither terminated nor disciplined and remains employed by Defendant. Plaintiff reasonably believes that his participation in the July 2022 meeting contributed to Defendant's retaliatory animus and ultimately factored into the decision to terminate his employment.

19. Following his return from medical leave, Plaintiff observed that he was no longer being afforded equal opportunities for success relative to other members of the Sales Development Representative (SDR) team. Unlike his peers, Plaintiff was excluded from attending in-person industry conferences—events which routinely generated high-value leads. Moreover, he was excluded from team-building and leadership opportunities, including interviewing candidates and planning team events, which were instead given to more junior, less experienced members of his team.

20. Plaintiff was also subjected to disruptive account changes during the middle of an active fiscal quarter, with several key accounts reassigned to other SDRs without explanation, undermining Plaintiff's sales momentum and opportunity pipeline.

21. Despite these impediments, Plaintiff's performance during the second fiscal quarter (May through July 2022) was exceptional. He achieved 100% of his individual and team sales targets and was responsible for generating the majority of the revenue bookings attributed to the Enterprise segment of the SDR team.

22. In August 2022, just weeks before Plaintiff's termination, Plaintiff's direct manager, Christian Haas-Kwon, encouraged him to begin preparing for a promotion expected to occur in or around December 2022, near Plaintiff's 18-month mark. Mr. Haas-Kwon emphasized Plaintiff's strong performance and advised him to explore any number of internal roles of interest, including those in sales or marketing. He provided Plaintiff with specific direction on

the promotion process and encouraged outreach to other teams—a directive Plaintiff acted upon by contacting colleagues and expressing interest in future openings.

23. On or about September 7, 2022, Plaintiff met with Emily Kirsch, Defendant's HR Generalist, and informed her that he would require another period of intermittent medical leave in the coming weeks. Ms. Kirsch acknowledged this request and guaranteed support, reiterating Defendant's accommodations and full commitment to supporting Plaintiff during his leave. She advised Plaintiff to share the details with his manager, Mr. Haas-Kwon, during their next routine meeting on September 15.

24. On September 15, 2022, only eight days later, Plaintiff attended what he was led to believe would be his routine weekly "one-on-one" meeting with Mr. Haas-Kwon, where he planned to disclose and discuss the medical leave, according to Ms. Kirsch's direction. He was surprised to find Maggie Lee, an HR representative, also in attendance. Within minutes and without prior notice, Plaintiff was summarily terminated from his employment. When Plaintiff asked for the reason, Mr. Haas-Kwon vaguely cited "performance" and then immediately exited the meeting. Ms. Lee then admitted she was unaware of any specific performance issues and stated unequivocally that she would follow up with more information. No such follow-up ever occurred.

25. Defendant never engaged in the legally required interactive process with Plaintiff regarding his September 7 accommodation and intermittent leave request, nor did it provide any reasonable accommodation prior to his termination. Instead, Defendant terminated Plaintiff just days after he invoked his rights under the PFMLA.

26. Upon information and belief, none of the other seven Boston-based SDRs were terminated around that time, and at least one or more of them had not met their individual or

team targets for the second fiscal quarter, as well as other prior fiscal quarters. Plaintiff also understands that none of the other team members generated sales pipeline revenue performance comparable to his own.

27. Plaintiff was the most senior Boston SDR at the time of his termination, with substantially more experience and responsibilities than his peers. At all times prior to and through his termination, Plaintiff was qualified for his position, performed his duties satisfactorily, and was never formally disciplined.

28. At no point did Plaintiff's disability pose any risk of harm to himself or others in the workplace, and he remained fully capable of performing the essential functions and tasks of his role, with or without reasonable accommodation.

29. Defendant regarded Plaintiff as having a disability, and Plaintiff had a documented history of serious and persistent health conditions that qualified as a protected disability under state law.

30. In the months leading up to his termination, and throughout the second and third fiscal quarters, many, or possibly all, of Plaintiff's sales calls were secretly recorded and stored by Defendant using its default SalesLoft telephone-dialing configuration. These secret audio recordings, obtained without Plaintiff's knowledge, consent or control, which Defendant used for internal performance monitoring and training, along with emails, presentations, and other materials, capture Plaintiff's competence, professionalism, and positive rapport with clients and colleagues, and are expected to serve as compelling evidence of his performance and character during discovery.

31. Plaintiff only recently discovered that Defendant's recording practices constituted unlawful interceptions under state law. Plaintiff had no reasonable opportunity to discover the

illegality earlier because Defendant concealed the nature of its recording practices, failed to provide any notice or training, and never obtained Plaintiff's informed consent. Plaintiff reasonably relied on Defendant's representations and omissions regarding its call monitoring and recording practices and did not investigate their legality until recently, when he pieced together that these practices violated state law.

32. Defendant's undisclosed recording practices violated state law, including M.G.L. c.272 § 99 and M.G.L. c. 214 § 1B.

33. As a result of the above-described violations of state law, Defendant is liable to Plaintiff for back pay, front pay, unpaid wages and commissions, compensatory and punitive damages, emotional distress damages, and all other remedies available under law.

34. Plaintiff has complied with all administrative and procedural prerequisites to filing this action, including those set forth in M.G.L. c. 151B, §5.

<u>Count I - Disability Discrimination (M.G.L. c. 151B, § 4(16))</u>

35. Plaintiff repeats and incorporates by reference all preceding allegations as if fully set forth herein.

36. At all relevant times, Plaintiff was a qualified disabled person within the meaning of M.G.L. c. 151B, § 1(16) and was capable of performing the essential functions of his position with or without reasonable accommodation.

37. Defendant Benchling, Inc. is an employer as defined by M.G.L. c. 151B, § 1(5) and is subject to the requirements of Chapter 151B.

38. Defendant was aware of Plaintiff's disability and medical conditions and received timely, documented requests for reasonable accommodations, including medical leave and remote work flexibility.

39. Defendant failed to engage in the required interactive dialogue with Plaintiff and failed to reasonably accommodate his known disability, in violation of its statutory duties.

40. Defendant ultimately terminated Plaintiff in whole or in part because of his disability and/or because he sought accommodation for it.

41. As a direct and foreseeable result of Defendant's unlawful discrimination, Plaintiff has suffered loss of income, loss of employment benefits, emotional distress, and other compensable injuries.

42. Defendant's conduct was willful, knowing, and/or undertaken with reckless disregard of Plaintiff's rights under Massachusetts law, entitling Plaintiff to compensatory and punitive damages, as well as reasonable attorneys' fees and costs under M.G.L. c. 151B, § 9.

### Count II - Retaliation (M.G.L. c. 151B, § 4(4))

43. Plaintiff repeats and incorporates by reference all preceding allegations as if fully set forth herein.

44. Plaintiff engaged in protected conduct under M.G.L. c. 151B, including but not limited to: (a) requesting reasonable accommodations for his disabling conditions; (b) requesting and exercising medical leave; and (c) participating in a July 2022 SDR team meeting in solidarity with colleagues to oppose Defendant's disparate return-to-office policy, which imposed stricter requirements on SDRs than on other departments. Plaintiff reasonably believed the policy was discriminatory, unfair, and inconsistent with the rights of employees to be free from disability-based discrimination and retaliation under Massachusetts law.

45. Shortly after requesting additional intermittent leave and reaffirming his accommodation needs, Plaintiff was terminated without warning or substantiated performance rationale.

46. Defendant's termination of Plaintiff was retaliatory in nature and in violation of M.G.L. c. 151B, § 4(4), which prohibits employers from retaliating against any individual for asserting their rights under the statute.

47. As a result of Defendant's unlawful retaliation, Plaintiff has sustained significant financial and emotional damages, including lost wages, lost benefits, reputational harm, and emotional distress.

48. Defendant's retaliatory actions were taken with malice or reckless disregard for Plaintiff's rights, entitling him to compensatory and punitive damages, as well as attorneys' fees and costs under M.G.L. c. 151B, § 9.

### Count III - Retaliation Under PFMLA (M.G.L. c. 175M, § 9(d))

49. Plaintiff repeats and incorporates by reference all preceding allegations as if fully set forth herein.

50. At all relevant times, Plaintiff was a covered employee entitled to leave under the Massachusetts Paid Family and Medical Leave Act (PFMLA), M.G.L. c. 175M, and Defendant was a covered employer.

51. In January 2022, Plaintiff applied for and was granted paid medical leave benefits through the Massachusetts Department of Family and Medical Leave (DFML). Defendant approved his leave and was aware of the underlying qualifying health condition.

52. In addition to exercising his own PFMLA rights, Plaintiff also engaged in protected activity by joining a July 2022 SDR team meeting in solidarity with colleagues to oppose Defendant's stricter return-to-office policy, which Plaintiff reasonably believed was unfair, discriminatory, and inconsistent with the equal rights of employees under Massachusetts law, including those requiring medical leave or accommodations.

53. On or about September 7, 2022, Plaintiff notified Defendant's HR personnel of his intent to take an additional period of intermittent PFMLA leave in the coming weeks, consistent with medical guidance.

54. Just eight days later, on September 15, 2022, Defendant abruptly terminated Plaintiff's employment without prior warning or substantiated performance documentation.

55. Plaintiff's termination occurred in close temporal proximity to his protected request for PFMLA leave and after his prior exercise of PFMLA rights earlier in the year.

56. Defendant's conduct constitutes retaliation in violation of M.G.L. c. 175M, § 9(d), which prohibits employers from taking any adverse action against an employee for exercising rights under the Act or applying for leave benefits.

57. As a result of Defendant's unlawful retaliation, Plaintiff has suffered lost wages, lost benefits, emotional distress, reputational harm, and other compensable injuries.

58. Pursuant to M.G.L. c. 175M, § 9(d) and M.G.L. c. 149, § 150, Plaintiff is entitled to treble damages, reasonable attorneys' fees and costs, pre- and post-judgment interest, and any other relief This Court deems just and proper.

### Count IV - Wrongful Termination in Violation of Public Policy

59. Plaintiff repeats and incorporates by reference all preceding allegations as if fully set forth herein.

60. Massachusetts recognizes a narrow exception to the at-will employment doctrine where an employee is terminated for reasons that violate a clearly established public policy.

61. It is the public policy of the Commonwealth of Massachusetts to protect the rights of employees to take protected medical leave, to seek reasonable accommodations for disabling health conditions, and to be free from retaliation for exercising rights guaranteed under state law.

62. Plaintiff was terminated by Defendant on September 15, 2022, just days after notifying Defendant of his intent to take further protected medical leave under the PFMLA and M.G.L. c. 151B.

63. Plaintiff's termination was motivated, in whole or in part, by his refusal to forgo these rights and by his attempt to exercise legally protected medical leave and accommodation rights, conduct which is explicitly protected under Massachusetts public policy.

64. Defendant's conduct constitutes wrongful discharge in violation of public policy.

65. As a direct and proximate result of Defendant's unlawful termination, Plaintiff has suffered damages including lost wages, lost benefits, emotional distress, and reputational harm.

66. Plaintiff is entitled to compensatory damages and all other relief This Court deems just and proper, including punitive damages where appropriate.

67. This claim is premised on independent public policies embodied in M.G.L. c. 175M (PFMLA) and the Commonwealth's privacy and wiretapping protections (M.G.L. c. 214, § 1B; M.G.L. c. 272, § 99), separate and apart from M.G.L. c. 151B. It is pleaded in the alternative to preserve Plaintiff's rights in the event statutory remedies are determined not to provide complete relief.

## Count V - Promissory Estoppel

68. Plaintiff repeats and incorporates by reference all preceding allegations as if fully set forth herein.

69. Defendant, through its authorized agents including Christian Haas-Kwon during Plaintiff's recruitment in 2021 and during his tenure throughout 2022, made clear and repeated promises and assurances that Plaintiff's employment with Benchling would offer significant growth opportunities, including vertical or lateral advancement.

70. During recruitment in 2021, Defendant's manager, Christian Haas-Kwon, represented that Benchling was "doubling this year," that there was "lots of room to grow vertically or laterally," and that employment offered career mobility, benefits, and advancement opportunities. Plaintiff reasonably relied on these representations in pursuing and accepting employment with Benchling rather than other available opportunities.

71. In or around August 2022, Plaintiff's direct supervisor, Christian Haas-Kwon, acting on behalf of Defendant, advised Plaintiff to begin preparing for a promotion expected to occur in or around December 2022, at Plaintiff's 18-month employment mark.

72. Mr. Haas-Kwon explicitly acknowledged Plaintiff's outstanding performance during the second fiscal quarter, advised him of the internal mobility process, and directed him to begin identifying and exploring roles of interest, including positions in sales or marketing.

73. Relying on this directive, Plaintiff undertook concrete steps toward internal advancement, including messaging team members, engaging in exploratory conversations, and initiating early preparations for internal applications.

74. At no time did Defendant or Mr. Haas-Kwon indicate that Plaintiff was at risk of disciplinary action, demotion, or termination. On the contrary, Plaintiff was led to believe that he was on track for advancement based on performance and tenure.

75. Plaintiff reasonably and foreseeably relied on these representations to his detriment, by investing time and energy into pursuing roles within Defendant's organization and refraining from seeking external employment opportunities.

76. Defendant's subsequent termination of Plaintiff, without any notice, explanation, or performance documentation, constituted a breach of the reasonable expectations created by Defendant's own agent, and rendered Plaintiff's reliance harmful and damaging.

77. As a direct and proximate result of this detrimental reliance, Plaintiff has suffered financial losses, reputational harm, emotional distress, and lost opportunity for advancement, including the loss of expected promotion to an Account Executive or similar role with substantially increased on-target earnings ('OTE') of $180,000+, and additional equity grants.

78. Plaintiff is entitled to compensatory damages and such other relief as the Court may deem just and proper.

### Count VI - Unlawful Interception of Communications (M.G.L. c. 272, § 99)

79. Plaintiff repeats and incorporates by reference all preceding allegations as if fully set forth herein.

80. Massachusetts law requires the consent of all parties to the interception or recording of wire and oral communications. M.G.L. c. 272, § 99.

81. Defendant Benchling, Inc. intentionally intercepted, caused to be intercepted, or secretly recorded Plaintiff's telephone communications, including business development and client calls placed through SalesLoft, by means of a device, without the consent of all parties to those communications.

82. Defendant failed to disclose its default call-recording practices to Plaintiff or the call recipients, failed to obtain written or verbal consent, and affirmatively concealed the existence and scope of such practices.

83. Plaintiff reasonably relied on Defendant's omissions and was unaware that his communications were being secretly recorded and stored. He only recently discovered that Defendant's conduct constituted unlawful interception under Massachusetts law.

84. Defendant's unlawful conduct deprived Plaintiff of his statutory rights and constituted a substantial invasion of privacy.

85. Pursuant to M.G.L. c. 272, § 99(Q), Plaintiff is entitled to actual damages, punitive damages, attorney's fees, and costs.

### Count VII - Invasion of Privacy (M.G.L. c.214, § 1B)

86. Plaintiff repeats and incorporates by reference all preceding allegations as if fully set forth herein.

87. Massachusetts law protects individuals from unreasonable, substantial, or serious interference with their privacy. M.G.L. c.214, § 1B.

88. Defendant knowingly and intentionally engaged in undisclosed monitoring and storage of Plaintiff's communications, including telephone call recordings, metadata, and related electronic information, without his knowledge or consent.

89. Defendant used and disclosed these stored communications internally for performance monitoring, training, and other purposes beyond the scope of any authorized access.

90. These undisclosed practices constituted an unreasonable and serious interference with Plaintiff's privacy rights under Massachusetts law.

91. Plaintiff did not become aware of the unlawful nature of these practices until recently, as Defendant affirmatively concealed its recording and storage activities and never provided notice or sought consent.

92. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages including emotional distress, reputational harm, and loss of dignity, and is entitled to compensatory damages, punitive damages, attorney's fees, and costs.

### Count VIII - Intentional Infliction of Emotional Distress (Common Law)

93. Plaintiff repeats and incorporates by reference all preceding allegations as if fully set forth herein.

94. At all relevant times, Defendant was aware that Plaintiff suffered from serious medical conditions, including depression, anxiety, and insomnia, and that Plaintiff had taken protected leave to manage these conditions.

95. Despite this knowledge, Defendant engaged in a pattern of conduct designed to undermine, isolate, and eventually terminate Plaintiff, including: withholding commissionable work upon his return from leave; excluding him from conferences and internal advancement opportunities; reassigning accounts without explanation; misrepresenting his promotion prospects; and terminating him abruptly just eight days after he informed HR of his need for additional medical leave.

96. Plaintiff was terminated without notice, without prior discipline, and without a documented performance rationale, despite being medically cleared and having achieved 100% of quota and major pipeline contribution in the quarter preceding his termination.

97. This conduct, particularly the timing of Plaintiff's termination in close proximity to a protected leave request, was intentional, outrageous, and committed with reckless disregard for Plaintiff's emotional well-being and legal rights.

98. In addition, Defendant's undisclosed interception, recording, and storage of Plaintiff's communications, separate and apart from the termination decision, was extreme and outrageous and independently caused severe emotional distress.

99. As a direct and foreseeable result of Defendant's conduct, Plaintiff suffered severe emotional distress, including worsening depression, anxiety, sleep disruption, diminished self-worth, and mental health deterioration requiring ongoing treatment and counseling.

100. Defendant is liable for general and special damages arising from this conduct, including compensatory damages for pain and suffering, emotional distress, and mental anguish.

## Reservation of Federal Rights

101. Plaintiff repeats and incorporates by reference all preceding allegations as if fully set forth herein.

102. Plaintiff expressly reserves all rights and causes of action arising under federal law, including but not limited to: the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.; the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq.; the Federal Wiretap Act, 18 U.S.C. §§ 2511-2520; and the Stored Communications Act, 18 U.S.C. §§ 2701-2707.

103. Plaintiff does not assert such federal claims in this Complaint in order to maintain jurisdiction in this Court, but expressly preserves them for filing in an appropriate forum. Nothing in this pleading shall be construed as a waiver, abandonment, or forfeiture of Plaintiff's rights under federal law, including claims arising from Defendant's unlawful surveillance, interception, recording, and storage of Plaintiff's communications.

## Prayer for Relief

104. WHEREFORE, Plaintiff Julian Ross respectfully requests that This Court enter judgment in his favor and against Defendant Benchling, Inc., and grant the following relief:

105. Back pay in the form of lost wages, commissions, bonuses, stock options, and other compensation and benefits to which Plaintiff would have been entitled but for Defendant's unlawful conduct;

106. Front pay in lieu of reinstatement, including future lost wages and diminished earning capacity;

107. Liquidated damages pursuant in an amount equal to the sum of lost wages, interest, and other compensation;

108. Treble damages pursuant to M.G.L. c. 149, § 150 and the PFMLA, M.G.L. c. 175M, § 9(d);

109. Compensatory damages pursuant to the PFMLA (M.G.L. c. 175M, § 9(d)), M.G.L. c. 151B, and Massachusetts common law, including damages for emotional distress, mental anguish, reputational harm, and loss of professional standing;

110. Punitive damages pursuant to M.G.L. c. 151B and other applicable statutes, based on Defendant's willful, malicious, and reckless disregard of Plaintiff's rights;

111. Injunctive relief, including but not limited to an order requiring Defendant to revise its employment policies and practices to comply with state law;

112. Reasonable attorneys' fees and costs pursuant to M.G.L. c. 151B, § 9 and M.G.L. c. 149, § 150;

113. Pre- and post-judgment interest on all amounts awarded, as provided by law; and

114. Such other and further relief as This Court deems just and proper.

## Demand For Jury Trial

Plaintiff demands a trial by jury on all issues and all counts.

PLAINTIFF, PRO SE

*/s/ Julian Ross*
Julian Ross
105 East Street
Hadley, MA 01035
Telephone: 413-531-9810
E-mail: jross21@gmail.com