UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JULIAN ROSS,<br><br>                     Plaintiff,<br><br>v.<br><br>BENCHLING, INC.,<br><br>                     Defendant. | Civil Action No.: 3:25-cv-30176 |

**MEMORANDUM OF LAW IN SUPPORT OF BENCHLING'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO PARTIALLY DISMISS**

Defendant Benchling, Inc. ("Benchling"), by and through its undersigned counsel, hereby respectfully submits this memorandum of law in support of its motion: (i) compelling Plaintiff Julian Ross ("Plaintiff") to arbitrate all claims in his Complaint (ECF No. 1, Ex. 1) ("Complaint") pursuant to the Federal Arbitration Act ("FAA") and the Massachusetts Uniform Arbitration Act ("UAA"); or, in the alternative, (ii) dismissing Counts IV–VIII for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion").

**PRELIMINARY STATEMENT**

Plaintiff's Complaint is procedurally and substantively deficient.

Plaintiff commenced this action in blatant disregard of the clear and unambiguous Arbitration Agreement to which he knowingly and voluntarily agreed. As part of Plaintiff's employment with Benchling, Plaintiff entered into a binding arbitration agreement in which he agreed to arbitrate "all claims . . . arising out of, related to or connected with [Plaintiff's] employment with [Benchling]." Plaintiff's claims – all predicated on his employment with Benchling – fall squarely within the Arbitration Agreement's purview, and his claims must proceed to arbitration.

Even if this Court declines to compel arbitration, at least five of Plaintiff's claims cannot stand. Counts IV through VIII – alleging wrongful termination in violation of public policy, promissory estoppel, violation of Mass. Gen. Laws ch. 272, § 99, violation of Mass. Gen. Laws ch. 214, § 1B, and intentional infliction of emotional distress – fail as a matter of law. The claims lack the requisite factual predicates and simply parrot the statutory language, rendering them conclusory and ripe for dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

For these reasons and those set forth in greater detail herein, this Court should compel arbitration and stay this lawsuit. Should this Court decline to compel arbitration, it should, at a minimum, dismiss Plaintiff's implausible claims.

## RELEVANT FACTS

Plaintiff alleges he resides in Massachusetts, and he performed services for Benchling as a Sales Development Representative from approximately June 21, 2021 to September 15, 2022. (Compl., ¶¶ 3, 5, 24; Benchling Decl., ¶ 5, attached hereto as Exhibit 1). Benchling is a Delaware corporation, maintains its principal place of business in California and does business throughout the United States. (Compl., ¶ 4; Benchling Decl., ¶ 4).

In consideration for his employment at Benchling, on May 12, 2021, Plaintiff executed a binding Arbitration Agreement (the "Arbitration Agreement," or the "Agreement"). (Benchling Decl., ¶¶ 6, 8, Ex. A). By its express terms, the Agreement requires Plaintiff "submit to mandatory binding arbitration any dispute, claim or controversy arising out of or relating to [Plaintiff's] employment with [Benchling]." (Benchling Decl., Ex. A).

In direct contravention to the Arbitration Agreement, on September 2, 2025, Plaintiff commenced two nearly identical lawsuits against Benchling – the instant action which was originally filed in Massachusetts Superior Court (the "State Court Action"), and a separate action

captioned *Julian Ross v. Benchling, Inc.*, Civil Action No. 3:25-cv-30158-KAR, which was originally filed and remains pending in this District (the "Federal Court Action") (together, the "Actions"). (*See* Compl.; Benchling Decl., ¶¶ 9–10, Ex. B). Between the Actions, Plaintiff alleges fourteen overlapping claims – all stemming from his employment with Benchling. (*See* Compl.; Benchling Decl., Ex. B). On October 9, 2025, Benchling properly removed this State Court Action under 28 U.S.C. § 1332 to the District of Massachusetts. (ECF No. 1).

Benchling now seeks to enforce the clear and unambiguous terms of the Arbitration Agreement by moving to (i) compel arbitration and stay the State Court Action; or, in the alternative, to (ii) dismiss Counts IV through VIII in the State Court Action for failure to state a legally viable cause of action. (*See* Motion.).[1]

## ARGUMENT

**I.     PLAINTIFF MUST ARBITRATE ALL CLAIMS IN THE COMPLAINT PURSUANT TO THE ARBITRATION AGREEMENT**

### A.     The FAA and UAA Govern the Arbitration Agreement

Plaintiff signed a valid and enforceable Arbitration Agreement, and his claims must proceed to arbitration. "The FAA establishes 'a liberal federal policy favoring arbitration' and reflects 'the fundamental principle that arbitration is a matter of contract.'" *Cunningham v. Lyft, Inc.*, 17 F.4th 244, 249 (1st Cir. 2021) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). Specifically, the FAA provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA thus creates an "enforcement mandate, which renders

---

[1] Similar to the Motion pending before this Court, Benchling moves to compel arbitration or, in the alternative, to partially dismiss the Federal Court Action. In the Federal Court Action, Benchling also moves to consolidate the instant and Federal Court Actions, in accordance with L.R., D. Mass. 40.1(k). *See* Civil Action No. 3:25-cv-30158-KAR, ECF No. 10.

agreements to arbitrate enforceable as a matter of federal law." *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 650 (2022).

The FAA applies to arbitration agreements in employment contracts where, as here, the agreement "evidenc[es] a transaction involving [interstate] commerce." 9 U.S.C. § 2. *See Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001) (holding the FAA only exempts employment contracts of transportation workers, not all employment contracts); *Salvi v. TRW Auto. U.S. LLC*, No. CIV.A. 11-40085-FDS, 2012 WL 274755, at *3 (D. Mass. Jan. 30, 2012) (noting the FAA "governs the enforcement of written arbitration agreements, including agreements in most employment contracts"). Courts interpret the interstate commerce requirement broadly, in keeping with Congress's full constitutional authority under the Commerce Clause. *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56–57 (2003) (finding the FAA should apply even if there is no "'specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent 'a general practice . . . subject to federal control'").

The Arbitration Agreement unquestionably arises out of Plaintiff's employment with Benchling, and this employment relationship has a substantial connection to interstate commerce. Plaintiff is a Massachusetts resident, and he performed work for Benchling in Massachusetts. (Compl., ¶ 3). Benchling is a Delaware corporation which does business throughout the United States. (Compl., ¶ 4; Benchling Decl., ¶ 4). Benchling's national commercial footprint falls squarely within interstate commerce as contemplated under the FAA. Where, as here, the Arbitration Agreement involves interstate commerce, the FAA governs the Arbitration Agreement. *See Barrasso v. Macy's Retail Holdings, Inc.*, No. 1:15-CV-13098-ADB, 2016 WL 1449567, at *4 n. 3 (D. Mass. Apr. 12, 2016).

Arbitration also is proper under the UAA. *See* Mass. Gen. Laws ch. 251, § 1 *et seq.* The UAA recognizes the validity and enforceability of arbitration agreements except upon grounds for contract revocation. *Id.* Like the FAA, the UAA "express[es] a strong public policy favoring arbitration . . . ." *Town of Danvers v. Wexler Constr. Co.*, 12 Mass. App. Ct. 160, 163 (1981). Indeed, the Massachusetts Supreme Judicial Court has held:

> [U]nless there is positive assurance that an arbitration clause is not susceptible to an interpretation that covers the asserted dispute, or unless no lawful relief can conceivably be awarded by the arbitrator, an order to arbitrate should not be denied.

*Massachusetts Coalition of Police, Local 165 v. Town of Northborough*, 416 Mass. 252, 256, (1993) (quoting *School Comm. of Danvers v. Tyman*, 372 Mass. 106, 113 (1977)). The UAA further provides that an arbitration clause, like that contained in the Arbitration Agreement, "expressed in general terms should be construed as broadly as it was intended." *Town of Danvers*, 12 Mass. App. Ct. at 163; *Qestec, Inc. v. Krummenacker*, 164 F. Supp. 2d 172, 176 (D. Mass. 2001). Whether under the FAA or UAA, Plaintiff must arbitrate his claims.

> **B.    The Arbitration Agreement Properly Delegates Questions of Arbitrability to the Arbitrator**

The Arbitration Agreement expressly provides – and Plaintiff affirmatively agreed – that the arbitrator, *not* courts, must resolve questions of arbitrability. The Supreme Court has "consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

Here, the Arbitration Agreement clearly and unmistakably confers the question of arbitrability upon the arbitrator. Section 2 of the Arbitration Agreement incorporates the Judicial Arbitration and Mediation Services' ("JAMS") Employment Arbitration Rules and Procedures

("JAMS Rules"). (Benchling Decl., Ex. A). Rule 11(b) of the JAMS Rules states that "arbitrability disputes . . . shall be submitted to and ruled on by the Arbitrator."[2] By incorporating the JAMS Rules into the Arbitration Agreement, "the parties have agreed to be bound by rules that clearly and unmistakably provide for the arbitrator to determine arbitrability." *See Tannatt v. Varonis Sys., Inc.*, No. CV 18-12589-JGD, 2019 WL 830482, at *5 (D. Mass. Feb. 21, 2019).

Because there is clear and unmistakable evidence the parties intended to and, in fact did, delegate the arbitrability question to the arbitrator, the Court must "stay [] the action until such arbitration has been had . . . ." 9 U.S.C. § 3; *Vaiano v. United Nat'l Corp.*, 733 F. Supp. 3d 32, 39 (D. Mass. 2024) (citation omitted).

### C. The Arbitration Agreement is Valid, Binds the Parties, and Encompasses All Claims

Arbitration is mandatory and proper. A party seeking to compel arbitration must show that: (1) a valid arbitration agreement exists; (2) the movant is entitled to invoke the arbitration agreement; (3) the other party is bound by the arbitration agreement; and (4) the claims asserted are within the scope of the arbitration agreement. *Morales-Posada v. Cultural Care, Inc.*, 141 F.4th 301, 311 (1st Cir. 2025) (citation omitted). Benchling easily satisfies each requirement.

*First*, the Arbitration Agreement is valid and enforceable. "To determine whether a valid agreement to arbitrate exists, federal courts 'apply ordinary state-law principles that govern the formation of contracts.'" *Okereke v. Uber Techs., Inc.*, No. CV 16-12487-PBS, 2017 WL 6336080, at *5 (D. Mass. June 13, 2017) (quoting *First Options*, 514 U.S. at 944). "A valid and enforceable contract under Massachusetts law[3] exists when the parties agree to 'the material terms' and 'have

---

[2] *See* JAMS Employment Arbitration Rules & Procedures at 7, https://www.jamsadr.com/files/Uploads/Documents/JAMS-Rules/JAMS_employment_arbitration_rules-2021.pdf.

[3] Massachusetts choice-of-law rules apply to the validity of an arbitration agreement. *See Bekele v. Lyft, Inc.*, 199 F. Supp. 3d 284, 294 n. 4 (D. Mass. 2016), *aff'd*, 918 F.3d 181 (1st Cir. 2019). Massachusetts has adopted a "functional choice-of-law approach," which focuses on "the interests of the parties, the States involved, and the interstate system

a present intention to be bound by that agreement.'" *Id.* (citation omitted). "The essential elements for the formation of a contract under Massachusetts law consist of an offer, acceptance, and consideration." *Doe v. Trs. of Bos. Coll.*, 892 F.3d 67, 89 (1st Cir. 2018) (citing *Quinn v. State Ethics Comm'n*, 516 N.E.2d 124, 127 (Mass. 1987)).

Plaintiff knowingly and voluntarily entered into the Arbitration Agreement with Benchling, and valuable consideration supported the Agreement. On May 12, 2021, Plaintiff signed the Arbitration Agreement, expressly "agree[ing] to submit to mandatory binding arbitration any dispute, claim or controversy arising out of or relating to [Plaintiff's] employment with [Benchling]." (Benchling Decl., Ex. A). By signing the Agreement, Plaintiff specifically acknowledged that he "read and underst[ood]" the Arbitration Agreement and "enter[ed] into it freely and voluntarily." (*Id.*). Plaintiff further agreed that arbitration would be the "exclusive method by which to resolve any Arbitrable Claims" and "WAIVE[D] ANY RIGHTS [HE] MAY HAVE TO TRIAL BY JURY IN REGARD TO ARBITRABLE CLAIMS." (*Id.*) (emphases in original). In exchange, Plaintiff received employment with Benchling and Benchling's reciprocal promise to arbitrate. (*See id.*). The Arbitration Agreement is valid and fully enforceable against Plaintiff. *See Bourque v. Rollins, Inc.*, 764 F. Supp. 3d 11, 17 (D. Mass. 2025) (finding parties formed a valid agreement to arbitrate in similar circumstances).

*Second*, Benchling properly invokes the Arbitration Agreement. Indeed, the Agreement *mandates* Benchling and Plaintiff arbitrate all disputes arising from Plaintiff's employment with Benchling. (*See* Benchling Decl., Ex. A, ¶ 1) ("The parties agree that arbitration shall be the

---

as a whole." *Id.* "One guiding principle is the identification of that state which has 'the most significant relationship to the transaction and the parties.'" *Id.* (citations omitted). Here, Massachusetts appears to have the most significant relationship to the Arbitration Agreement as Plaintiff is a Massachusetts resident and performed work for Benchling in Massachusetts. (Compl., ¶ 3). *See id.*; *Okereke v. Uber Techs., Inc.*, No. CV 16-12487-PBS, 2017 WL 6336080, at *5 n. 6 (D. Mass. June 13, 2017).

*exclusive method* by which to resolve any Arbitrable Claims, and specifically agree that they *will not file a court lawsuit to pursue any Arbitrable Claims*.") (emphases added). *See Design Mark Indus., LLC v. Unbeaten Path Int'l, Ltd.*, No. 1:24-CV-11850-IT, 2025 WL 915771, at *8 (D. Mass. Mar. 26, 2025); *Thornton v. Macy's Retail Holdings, Inc.*, 594 F. Supp. 3d 271, 275 (D. Mass. 2022).

*Third*, Plaintiff is bound by the Arbitration Agreement. By executing the Agreement, Plaintiff acknowledged he "read and underst[oo]d this Agreement and enter[ed] into it freely and voluntarily" and thus must adhere to its terms. (Benchling Decl., Ex. A, ¶ 7). *See Fraga v. Premium Retail Servs., Inc.*, 704 F. Supp. 3d 289, 301 (D. Mass. 2023) (finding plaintiff bound to arbitration agreement because she was a party to it). Moreover, the Agreement expressly provides that it "shall continue to be in full force and effect after [Plaintiff's] employment with [Benchling] has ended," cementing the Agreement's application to Plaintiff's claims. (Benchling Decl., Ex. A, ¶ 4). *See Thornton*, 594 F. Supp. 3d at 275–76 (finding plaintiff bound to arbitration agreement even though she was no longer employed by defendant).

*Fourth*, the Arbitration Agreement unequivocally encompasses the claims in the Complaint. To determine whether Plaintiff's claims fall within the Agreement's scope, courts focus on "the factual allegations underlying the claims in the complaint." *Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 7 (1st Cir. 2014) (citation and internal quotation marks omitted). Any doubts as to the scope of the arbitration agreement should be "resolved in favor of arbitration." *Id.*

Here, all of Plaintiff's claims fall squarely within the Arbitration Agreement's scope. The Agreement provides that arbitration applies to all claims "arising out of, related to or connected with [Plaintiff's] employment with [Benchling], including but by no means limited to . . . claims

based upon any federal, state or local ordinance, statute, regulation or constitutional provision . . . and any and all state or local laws prohibiting discrimination or regulating any terms or conditions of employment." (Benchling Decl., Ex. A, ¶ 1). "This language indicates an intent to arbitrate a broad scope of claims." *See Thornton*, 594 F. Supp. 3d at 276 (citation and internal quotation marks omitted). Plaintiff's claims – each rooted in his Benchling employment – are precisely those the Arbitration Agreement contemplates. (*See* Compl.). (*See also* Benchling Decl., Ex. A, ¶ 1) Where, as here, the Arbitration Agreement is valid, binding, and encompasses Plaintiff's claims, arbitration is warranted and proper.

## II. IN THE ALTERNATIVE, THIS COURT MUST DISMISS COUNTS IV THROUGH VIII PURSUANT TO FEDERAL RULE 12(b)(6)

Even if this Court declines to compel arbitration, Counts IV – VIII summarily fail under Federal Rule 12(b)(6). Federal Rule 12(b)(6) requires dismissal where a complaint, as here, fails to allege sufficient facts "'to state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Rather, Fed. R. Civ. P. 8(a) requires the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to the relief" and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citation and internal quotation marks omitted).

Applying this standard, the Court should dismiss Plaintiff's claims for: (i) wrongful termination in violation of public policy; (ii) promissory estoppel; (iii) violation of the

Massachusetts Wiretap Act, Mass. Gen. Laws ch. 272 § 99; (iv) violation of Mass. Gen. Laws ch. 214, § 1B; and (v) intentional infliction of emotional distress.

### A. Plaintiff Does Not Allege Wrongful Termination in Violation of a Well-Established Public Policy

Plaintiff does not, and cannot, plead a claim for wrongful termination in violation of public policy under Massachusetts law. "The baseline common law rule in Massachusetts is that an employer may lawfully terminate a relationship with an at-will employee at any time." *Murray v. Warren Pumps, LLC*, 821 F.3d 77, 89 (1st Cir. 2016). A "narrow exception" to this rule exists only where an employee's termination violates a "sufficiently important and clearly defined" public policy. *Id.*; *Barbuto v. Advantage Sales & Mktg., LLC*, 78 N.E.3d 37, 50 (Mass. 2017).

To state a claim for wrongful termination, the employee must allege: (1) he engaged in conduct protected by a well-established public policy; and (2) his protected conduct was the cause of his termination. *Polito v. Shire Pharms.*, 263 N.E.3d 236 (2025) (citing *Shea v. Emmanuel Coll.*, 682 N.E.2d 1348, 1350 (Mass. 1997)). Plaintiff's allegations fail on both counts.

Plaintiff's failure to adequately allege participation in protected conduct is fatal to his wrongful termination claim. Such conduct includes: (1) asserting a legally guaranteed right; (2) doing what the law requires; (3) refusing to do what the law forbids; or (4) performing important public deeds, such as reporting violations of criminal law or cooperating with law enforcement. *Wood v. City of Haverhill*, No. 1:23-CV-12377-JEK, 2024 WL 4189932, at *9 (D. Mass. Sept. 13, 2024) (quoting *Meehan v. Med. Info. Tech., Inc.*, 177 N.E.3d 917, 920 (Mass. 2021)). However, not every statutory right provides grounds for a wrongful termination claim. *Rodrigues v. Scotts Co., LLC*, No. CIV.A. 07-10104-GAO, 2008 WL 251971, at *2 (D. Mass. Jan. 30, 2008) (citation omitted). "[A] plaintiff generally cannot bring a claim for unlawful termination in violation of public policy where another remedial scheme addresses the policy underlying the claim." *Boyd-*

*Perry v. Marblehead Pub. Sch.*, No. 1:24-CV-10606-IT, 2025 WL 27535, at *4 (D. Mass. Jan. 3, 2025).

Because the Massachusetts Fair Employment Practices Act ("MFEPA") and the Massachusetts Paid Family and Medical Leave Act ("MPFMLA") provide Plaintiff with a statutory means to vindicate their underlying public policies, the statutes cannot predicate Plaintiff's wrongful termination claim. (*See* Compl., Counts I–III). *See* Mass. Gen. Laws ch. 151B, § 5 (providing remedies for disability discrimination and retaliation claims); Mass. Gen. Laws ch. 175M, § 9(d) (providing remedies for MPFMLA retaliation claims). As a result, Plaintiff's wrongful termination claim necessarily fails. *See Boyd-Perry*, 2025 WL 27535 at *4 (refusing to base wrongful termination claim on disability discrimination or retaliation under Mass. Gen. Laws ch. 151B, § 5 or on retaliation under the FMLA).[4]

Nor can Massachusetts privacy laws underpin Plaintiff's wrongful termination claim. While Mass. Gen. Laws ch. 272, § 99 and ch. 214, § 1B may form the basis for a wrongful termination claim, the Massachusetts Supreme Court has required the privacy violation be "unreasonable, substantial, or serious." *Folmsbee v. Tech Tool Grinding & Supply, Inc.*, 630 N.E.2d 586, 590 (Mass. 1994) (citing *Cort v. Bristol-Myers Co.*, 431 N.E.2d 908, 912 (Mass. 1982)). Plaintiff's privacy claims are skeletal, at best, and they cannot support his wrongful termination claim. (*See infra;* Compl., ¶¶ 60–67). *See Folmsbee*, 630 N.E.2d at 590 (finding employer's drug testing program to be a "reasonable" interference and thus did not support wrongful termination claim); *see Cort*, 431 N.E.2d at 911–12 (finding employer's questionnaire was not "unreasonably intrusive" to support wrongful termination claim).

---

[4] *Kliskey v. Making Opportunity Count, Inc.*, 775 F. Supp. 3d 496, 506 (D. Mass. 2025) ("Massachusetts courts typically apply the framework used for retaliation claims under the FMLA.").

Even if Plaintiff alleged a sufficiently unreasonable privacy violation, the claim nevertheless fails because the claim lacks the requisite causal nexus. (*See* Compl., ¶¶ 62–63, 67). Indeed, Plaintiff fails to allege he opposed any purported privacy violation at all, let alone that such purported report caused his termination. This gaping hole summarily defeats Plaintiff's wrongful termination claim. *See Wood*, 2024 WL 4189932 at *10 (dismissing wrongful termination claim where plaintiff did not allege his termination bore "a direct connection" to public policy); *Shea*, 682 N.E.2d 1348, 1350 (Mass. 1997) (refusing to find wrongful termination where there was no evidence employer discharged plaintiff for a reason contrary to a well-established public policy). Accordingly, this Court must dismiss Plaintiff's wrongful termination claim.

### B. Plaintiff Does Not Allege Reasonable and Detrimental Reliance on an Unambiguous Promise

Plaintiff's promissory estoppel claim also is subject to dismissal. In Massachusetts, "[a] claim for promissory estoppel requires '(1) a representation intended to induce reliance on the part of a person to whom the representation is made; (2) an act or omission by that person in reasonable reliance on the representation; and (3) detriment as a consequence of the act or omission.'" *Dexter v. Dealogic, LLC*, 390 F. Supp. 3d 233, 245 (D. Mass. 2019) (quoting *Wilson v. HSBC Mortg. Servs., Inc.*, 744 F.3d 1, 14 (1st Cir. 2014)). An "unambiguous promise" and reasonable reliance on that promise are "essential" to the claim. *Carrabes v. Expeditors Int'l of Washington, Inc.*, No. CV 24-12142-AK, 2025 WL 2409840, at *8 (D. Mass. June 12, 2025), *report and recommendation adopted*, No. 1:24-CV-12142, 2024 WL 6475950 (D. Mass. Aug. 1, 2025) (citation and internal quotation marks omitted). "Where the reliance is unreasonable, such as where the subject promises are vague or indefinite, no claim for promissory estoppel will lie." *Id.* (citation and internal quotation marks omitted).

Plaintiff fails to allege the most fundamental elements of a promissory estoppel claim. (*See* Compl., ¶¶ 69–72). Plaintiff generally claims Benchling made promises regarding the Company's business outlook, Plaintiff's opportunities for advancement, and Plaintiff's performance – none of which are definite enough to support a promissory estoppel claim. (*See id.*, ¶¶ 70–72). *See Carrabes*, 2025 WL 2409840, at *9 (collecting cases).

And even if the alleged promises were sufficiently concrete, Plaintiff's at-will employment belies any reasonable reliance upon them. Massachusetts courts routinely reject promissory estoppel claims in these precise circumstances. *See Tinkham v. Jenny Craig, Inc.*, 699 N.E.2d 1255, 1257 (Mass. App. Ct. 1998) (finding employees' at-will status rendered any promises for promotion illusory); *Pitts v. Lucey*, No. 9501892, 1995 WL 1146866, at *2 (Mass. Super. Dec. 28, 1995) (finding reliance on employer's statement that employee "had management and growth potential" was not reasonable because statement "expressed only a condition that would exist if [plaintiff] were successful" and could not "be converted into a promise or an agreement for employment for a set term"). The outcome should be no different here.

Plaintiff's "acknowledge[ment] that [Plaintiff's] employment [wa]s at-will and that this [Arbitration] Agreement *d[id] not change such at-will status*" further dooms Plaintiff's detrimental reliance claims. (*See* Benchling Decl., Ex. A, ¶ 7; Compl., ¶ 75) (emphases added). *See Croft v. Nat'l Bedding Co.*, No. CIV A. 04-11487-RWZ, 2006 WL 1716754, at *3 (D. Mass. June 20, 2006) (finding no detriment where plaintiff did not allege he lost a "sufficiently definite business opportunity" due to his reliance). Such pleading failures, individually and collectively, defeat Plaintiff's promissory estoppel claim.

    **C.**    **Plaintiff's Claim Under the Massachusetts Wiretap Act Fails Because Plaintiff Does Not Allege Use of an Intercepting Device**

Plaintiff's Massachusetts Wiretap Act ("MWA") claim fares no better. The MWA generally prohibits any person from willfully and secretly intercepting a wire or oral communication through an "intercepting device" without prior consent from all parties. Mass. Gen. Laws ch. 272, § 99. An "intercepting device" is:

> [A]ny device or apparatus which is capable of transmitting, receiving, amplifying, or recording a wire or oral communication *other than* . . . any telephone or telegraph instrument, equipment, facility, or a component thereof, . . . furnished to a subscriber or user by a communications common carrier *in the ordinary course of its business* under its tariff and being used by the subscriber or user *in the ordinary course of its business* . . . .

Mass. Gen. Laws ch. 272, § 99(B)(3) (emphases added). Thus, the MWA excludes intercepting devices used in the ordinary course of business (the "Telephone Equipment Exception"). *Vita v. New England Baptist Hosp.*, 243 N.E.3d 1185, 1226 (Mass. 2024) (Wendlandt, J., dissenting). A device is used in the "ordinary course of business" where the use has a "legitimate business purpose." *Peters v. Equiserve Inc.*, No. CIV.A. 05-1052-B, 2006 WL 709997, at *5 (Mass. Super. Feb. 24, 2006) (citation and internal quotation marks omitted).

Against this backdrop, Plaintiff's MWA claim fails because the alleged interception (i.e., Plaintiff's business development and client calls) falls squarely within the Telephone Equipment Exception. (*See* Compl., ¶ 81). In fact, Plaintiff acknowledges Benchling had a legitimate business purpose for the alleged interceptions – namely, "internal performance monitoring and training." (*See id.*, ¶ 30). Courts routinely invoke the Telephone Equipment Exception when employers intercept employees' communications for similar purposes. *See Peters*, 2006 WL 709997 at *5 (finding legitimate business purpose in "supervision of Call Center employees for their customer service skills"); *Dillon v. Massachusetts Bay Transp. Auth.*, 729 N.E.2d 329, 336 (Mass. App. Ct. 2000) (finding legitimate business purpose in "efficiency, safety, and sound maintenance record-keeping"); *O'Sullivan v. NYNEX Corp.*, 687 N.E.2d 1241, 1244 (Mass. 1997) (finding legitimate

business purpose in "monitoring the quality of telephone calls from telemarketers to [] customers"). Because Plaintiff does not and cannot allege the use of any intercepting device within the MWA, his claim necessarily fails.

### D. Plaintiff Did Not Suffer an Unreasonable, Substantial, or Serious Interference with a Highly Personal or Intimate Privacy Right

Nor can Plaintiff sufficiently plead an invasion of privacy claim under Mass. Gen. Laws ch. 214, § 1B. Section 1B provides, in relevant part, that a person "shall have a right against unreasonable, substantial, or serious interference with his privacy." To state a claim under Section 1B, Plaintiff must allege: (1) "a gathering and dissemination of facts of a private nature"; and (2) the invasion "resulted in an unreasonable, substantial, or serious interference with his privacy." *Burns v. City of Worcester*, 772 F. Supp. 3d 109, 144 (D. Mass. 2025). To fall within the statute's ambit, "[t]he disclosure must be of a 'highly personal or intimate nature.'" *Id.* (citation omitted). "Nevertheless, 'legitimate countervailing business interests in certain situations may render disclosure of personal information reasonable and not actionable under the statute.'" *Id.* (quoting *Bratt v. Int'l Bus. Machines Corp.*, 467 N.E.2d 126, 135 (Mass. 1984)).

Plaintiff's privacy claim under Section 1B is fundamentally flawed because the alleged disclosure concerned business operations, *not* highly personal or intimate facts. In fact, Plaintiff couches the alleged disclosures as "sales calls" and "business development and client calls" – the antitheses of the highly personal and intimate nature Section 1B requires. (Compl., ¶¶ 30, 81). *See Burns*, 772 F. Supp. 3d at 144 (noting highly personal or intimate disclosures include facts relating to "'marital status, legitimacy of children, identity of fathers of children, medical condition, welfare payments, alcohol consumption, family fights, and reputation'"); *Branyan v. Sw. Airlines Co.*, 105 F. Supp. 3d 120, 126 (D. Mass. 2015) ("A person's name, home address, and employer are hardly facts of a highly personal or intimate nature."); *Battenfield v. Harvard Univ.*, No.

915089F, 1993 WL 818920, at *8 (Mass. Super. Aug. 31, 1993) (finding employee had "little or no privacy interest in her work files, given that such information is property of her employer").

Moreover, and as Plaintiff acknowledges, Benchling has a legitimate countervailing business interest in the alleged acquisition and disclosure of such calls: internal performance monitoring and training. (*See id.*, ¶ 30). *See O'Sullivan*, 687 N.E.2d at 1244 (finding legitimate business purpose in "monitoring the quality of telephone calls from telemarketers to [] customers"); *Perreault v. A.L. Griggs Indus., Inc.*, No. 96361, 1998 WL 34060003, at *7 (Mass. Super. Oct. 5, 1998) ("When an employer has a legitimate interest in conveying private information about an employee relating to the employee's fitness or ability to do the job, disclosure does not constitute an unreasonable interference with the employer's privacy."). Courts routinely find an employer's legitimate business interest outweighs far more unreasonable and serious intrusions than those alleged here. *See Burns*, 772 F. Supp. 3d at 144 (finding employer's interest in maintaining a drug-free workplace outweighed intrusiveness of requiring employees to submit to a drug test); *Branyan*, 105 F. Supp. 3d at 126 (finding employer's interest in contacting employee outweighed intrusiveness of police officer's visit to employee's home).

As Plaintiff's allegations make plain, Plaintiff did not suffer an unreasonable, substantial, or serious interference with a highly personal or intimate privacy right, and his claim under Mass. Gen. Laws ch. 214, § 1B cannot stand.

> **E.    Plaintiff's Claim for Intentional Infliction of Emotional Distress is Preempted and Insufficient**

Not only is Plaintiff's intentional infliction of emotional distress ("IIED") claim insufficiently pled, it is preempted by the Massachusetts Workers' Compensation Act ("MWCA"). To state an IIED claim, Plaintiff must allege that: (1) Benchling intended, knew, or should have known its conduct would cause emotional distress; (2) the conduct was "extreme and outrageous;"

(3) the conduct caused emotional distress; and (4) the emotional distress was severe. *Daly v. Mason*, 752 F. Supp. 3d 346, 366 (D. Mass. 2024) (citation and quotation marks omitted). Plaintiff's IIED claim fails to clear at least two hurdles.

*First*, the MWCA preempts Plaintiff's IIED claim, rendering the claim beyond this Court's jurisdiction. The MWCA's exclusivity provision effectively abrogates subject matter jurisdiction by "bar[ring] claims brought by employees [and former employees] against their employers for any personal injuries which arise out of or in the course of employment." *Branyan v. Sw. Airlines Co.*, 105 F. Supp. 3d 120, 125 (D. Mass. 2015) (citation and internal quotation marks omitted). This exclusivity provision extends to IIED claims, including claims for emotional injuries suffered while on leave from employment, like those Plaintiff alleges. *See id.* at 125–26. The MWCA effectively forecloses Plaintiff from even "get[ting] to first base" on his IIED claim. *See McArdle v. Town of Dracut/Dracut Pub. Sch.*, 732 F.3d 29, 37 (1st Cir. 2013) (holding the MWCA's exclusivity provision barred the employee's IIED claim where the supervisors' conduct fell within their supervisory duties).

*Second*, even if not preempted, the Complaint fails to allege extreme or outrageous conduct. "Conduct is extreme and outrageous only if it is 'beyond all bounds of decency and . . . utterly intolerable in a civilized community.'" *Eissa v. Ledvance LLC*, 626 F. Supp. 3d 209, 219 (D. Mass. 2022), *on reconsideration in part*, No. CV 21-11515-NMG, 2023 WL 3260220 (D. Mass. May 3, 2023) (quoting *Sena v. Com.*, 629 N.E.2d 986, 994 (Mass. 1994)). Here, Plaintiff bases his IIED claim on his termination of employment and Benchling's alleged interception of his sales calls. (*See* Compl., ¶¶ 95–96, 98). Courts reject IIED claims predicated on far more egregious conduct, cementing the insufficiency of Plaintiff's IIED claim. *See Eissa*, 626 F. Supp.

3d at 219 (holding discouragement from taking leave, veiled threats about job loss, pay reduction, and termination soon after returning from leave did not amount to extreme or outrageous conduct).

### III. IT WOULD BE FUTILE TO PERMIT PLAINTIFF LEAVE TO AMEND COUNTS IV–VIII

This Court should dismiss Counts IV–VIII with prejudice because amendments would be futile. "Courts are not required to grant motions to amend prior complaints where 'the proposed amendment . . . is futile.'" *Johnston v. Box*, 453 Mass. 569, 583 (2009) (quoting *All Seasons Servs., Inc. v. Commissioner of Health & Hosps. of Boston*, 416 Mass. 269, 272 (1993)). A proposed amendment is futile if the new claims could not survive a motion to dismiss. *See Mancuso v. Kinchla*, 60 Mass. App. Ct. 558, 572 (2004) (affirming denial of motion to amend). Where, as here, Counts IV–VIII are fundamentally flawed, Plaintiff quite simply cannot allege facts sufficient to withstand dismissal.

### CONCLUSION

For the foregoing reasons, Benchling respectfully requests the Court grant the Motion and issue an Order: (i) compelling arbitration pursuant to the FAA and UAA and staying the Complaint pending arbitration; or, in the alternative, (ii) dismissing Counts IV–VIII with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

| | |
|---|---|
| Dated: October 14, 2025 | Respectfully submitted,<br><br>**BLETZER & BLETZER, P.C.**<br><br>*/s/ Conrad J. Bletzer, Jr.*<br>Conrad J. Bletzer, Jr., BBO No. 045760<br>300 Market Street<br>Brighton, MA 02135<br>617.254.8900<br>conrad@bletzerlaw.com<br><br>Shawn D. Fabian, Ill. Bar No. 6310637 (*pro hac vice* admission pending)<br>Katherine Oblak, Ill. Bar No. 6307200 (*pro hac vice* admission pending)<br>**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**<br>321 North Clark St., 32nd Floor<br>Chicago, Illinois 60654<br>312.499.6300<br>sfabian@sheppardmullin.com<br>koblak@sheppardmullin.com<br><br>*Attorneys for Defendant Benchling, Inc.* |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF BENCHLING'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, татTO PARTIALLY DISMISS was electronically filed with the Clerk of the Court and that a copy of the foregoing instrument was sent by first-class U.S. mail, postage prepaid, on October 14, 2025, addressed to the following parties:

Julian Ross

105 East Street, Apt. B

Hadley, MA 01035

jross2l@gmail.com


*/s/ Conrad J. Bletzer, Jr.*