UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 3:25-cv-30176-MGM

| | |
|---|---|
| JULIAN ROSS, | ) |
| Plaintiff | ) |
| v. | ) |
| | ) |
| BENCHLING, INC. | ) |
| Defendant | ) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO PARTIALLY DISMISS**

**Introduction**

1. Defendant Benchling's motion to compel arbitration and partially dismiss seeks to force this removed state-law case into private arbitration based on a boilerplate clause introduced only after Plaintiff had already accepted employment and resigned from his prior position. The clause was buried mid-way through a standardized electronic onboarding packet, presented on a take-it-or-leave-it basis with no notice during recruitment, no opportunity to negotiate, and no ability to proceed through the packet without electronic assent.

2. Under Massachusetts law and First Circuit precedent, such post-offer, non-negotiable clauses are both procedurally and substantively unconscionable and unenforceable when applied to statutory civil-rights and privacy claims. *Warfield v. Beth Israel Deaconess Med. Ctr.*, 454 Mass. 390 (2009); *Feeney v. Dell Inc.*, 465 Mass. 470 (2013); *Awuah v. Coverall N. Am., Inc.*, 703 F.3d 36, 43–44 (1st Cir. 2012). Even where the Federal Arbitration Act ("FAA") applies, courts must first ensure that an agreement to arbitrate was validly formed under state contract law and that its enforcement would not defeat public policy. *Awuah*, 703 F.3d at 43–44.

3.  Here, the arbitration clause was imposed after acceptance, without informed consent, as a condition of beginning work. That adhesive presentation—combined with the disparity in bargaining power between a national technology corporation and an individual Massachusetts employee—renders the agreement unenforceable under Massachusetts law. Compelling arbitration would strip a pro se litigant of the transparency, discovery rights, and appellate safeguards that judicial process ensures, while amplifying the structural advantage of a corporate employer represented by multiple law firms.

4.  Several of Plaintiff's claims—including those under M.G.L. c. 151B (discrimination and retaliation), c. 175M (PFML retaliation), and the Commonwealth's privacy and wiretap statutes, M.G.L. c. 272 § 99 and c. 214 § 1B—embody core public-policy protections unsuited to private arbitration. Massachusetts courts view with skepticism any attempt to compel arbitration of statutory discrimination or privacy claims absent clear and specific voluntary consent. *Warfield*, 454 Mass. at 398–400. Moreover, Plaintiff's § 99 and § 1B claims arise from undisclosed interception and durable retention of communications—independent statutory torts that are not "terms or conditions" of employment and therefore fall outside any employment-contract arbitration clause.

5.  Finally, prudential considerations favor resolving Plaintiff's pending Motion to Remand before reaching the merits of Defendant's arbitration or dismissal requests. This case was filed exclusively under Massachusetts law in Hampshire County Superior Court and removed on diversity grounds. Federal jurisdiction is disputed, and the Commonwealth's courts are the proper forum to interpret and enforce Massachusetts public-policy limits on arbitration. Proceeding to compel arbitration before deciding remand would risk premature interference with the state court's jurisdiction and the Commonwealth's statutory enforcement scheme.

6.     Because the arbitration clause was imposed under coercive, non-negotiable conditions; because several claims—particularly those involving discrimination, retaliation, protected leave, and privacy—invoke strong Massachusetts public policies unsuited to private arbitration; and because jurisdiction over this matter properly lies in the court from which it was removed, the motion to compel arbitration and to partially dismiss should be denied or deferred pending resolution of Plaintiff's Motion to Remand.

## Legal Standard

7.     Because jurisdiction is the threshold inquiry, courts ordinarily resolve subject-matter jurisdiction or remand before addressing the merits of a motion to compel arbitration. See *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (jurisdiction must be established before reaching the merits).

8.     The Federal Arbitration Act ("FAA") favors arbitration agreements only when they are validly formed and enforceable. 9 U.S.C. § 2; *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The party seeking arbitration bears the burden of proving both a valid agreement and that the dispute falls within its scope. Any doubts are resolved in favor of a judicial forum when statutory rights are at stake. *Warfield v. Beth Israel Deaconess Med. Ctr.*, 454 Mass. 390, 398–400 (2009).

9.     While the FAA establishes a general federal policy favoring arbitration, it preserves traditional state-law defenses governing contract formation, consent, and unconscionability. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339–41 (2011). Under § 2 of the FAA, arbitration clauses may be invalidated on "such grounds as exist at law or in equity for the revocation of any contract," so long as those rules apply neutrally and do not single out arbitration. Under both the FAA and the Massachusetts Uniform Arbitration Act, M.G.L. c. 251,

§ 1 et seq., arbitration clauses remain subject to defenses that "exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Accordingly, Massachusetts courts continue to apply their own unconscionability and public-policy doctrines—as in *Warfield* and *Feeney v. Dell Inc.*, 465 Mass. 470 (2013)—to prevent enforcement of arbitration provisions that were not knowingly or voluntarily agreed to, or that would effectively strip employees of substantive statutory rights.

## Argument

### I. Procedural Unconscionability: Adhesion and Lack of Choice

10. The arbitration clause was presented on a take-it-or-leave-it basis after Plaintiff had already accepted the offer, rendering the agreement procedurally unconscionable.

11. Benchling sought out and approached Mr. Ross through recruitment; he did not apply or bargain for these terms. (**Exhibit B**)

12. The arbitration clause was not mentioned during Benchling's recruitment efforts or during any offer discussions and negotiations, and appeared only in post-offer paperwork.

13. The arbitration clause was buried mid-way through Plaintiff's onboarding paperwork, occupying pages 5 and 6 of his wider employment agreement. It was not presented as a separate, negotiable term but as one indistinguishable component of a lengthy, pre-drafted packet. Defendant's own Exhibit 1(A) (Arbitration Agreement), attached to its motion to compel arbitration on October 14, 2025 (ECF No. 6-2, Exhibit 1(A)), confirms this: the clause appears as pages labeled "5" and "6" of a longer employment agreement, while all other pages of the employment agreement are omitted from the filing. These page numbers in ECF No. 6-2, Exhibit 1(A), and the omission of both the preceding and succeeding pages, underscore that the arbitration language was embedded within a broader, non-negotiable employment agreement, presented through DocuSign as a mandatory "one-click" signature field that had to be completed

before the system would allow the user to proceed to the next clause. At no time did Benchling identify the clause as optional, invite discussion, or provide any opportunity to opt out. By embedding the clause in this manner and conditioning Plaintiff's ability to begin work on electronic assent, Benchling deprived him of any meaningful choice or informed consent.

14. Human Resources told Plaintiff that beginning employment was contingent on signing the employment agreement packet in whole, including the arbitration clause. As there was no meaningful choice, the arbitration clause constitutes an archetypal adhesion contract under Massachusetts law.

15. These facts demonstrate the absence of any meaningful assent — the central inquiry under Massachusetts unconscionability law.

16. Massachusetts courts refuse to enforce arbitration clauses obtained through such unequal bargaining (*Feeney*, 465 Mass. at 479–80).

**II. Substantive Unconscionability of Arbitration Clause: Overly Broad and Asymmetric**

17. Beyond its coercive formation, the agreement is also substantively unconscionable.

18. The clause compels arbitration of "any dispute […] including torts," but exempts none of Benchling's own potential claims, effectively ensuring one-way enforcement in the employer's favor.

19. The clause waives class and collective procedures, limits available remedies, and imports JAMS fee rules that impose significant upfront costs and thereby chill or deter low-income claimants.

20. As in *Feeney*, where the Supreme Judicial Court held that a court may invalidate an arbitration agreement that renders claims "nonremediable" because of cost or procedural barriers, 465 Mass. at 496, Benchling's clause effectively denies Plaintiff any meaningful avenue for

relief through its individual-arbitration constraints.

21. The agreement also contains no mutual carve-out for injunctive or public relief, contrary to *Feeney* and *Warfield*.

### III. Public-Policy Exception for Massachusetts Statutory Rights

22. Claims under M.G.L. c. 151B (disability discrimination and retaliation), c. 175M (PFML retaliation), and c. 272 § 99 and c. 214 § 1B (wiretap and privacy) embody strong public interests reflecting the Commonwealth's legislative commitment to safeguarding equality, protected family leave, and personal privacy.

23. Forcing arbitration of such claims would undermine Massachusetts's statutory enforcement schemes and deprive courts of their essential oversight role. As the Supreme Judicial Court observed in *Warfield,* "we view with skepticism attempts to require arbitration of discrimination claims unless the employee clearly and voluntarily agreed to arbitrate." 454 Mass. at 400–01. The Court further held that parties seeking to arbitrate statutory discrimination claims "must, at a minimum, state clearly and specifically that such claims are covered by the contract's arbitration clause." Id. at 398–99. Benchling's generic "any dispute" language fails this clarity requirement, and Plaintiff's consent was neither clear nor voluntary.

24. Massachusetts courts likewise recognize that arbitration may not be enforced where it would render statutory rights "nonremediable." *Feeney* (2013). Here, arbitration would nullify Plaintiff's judicial remedy under M.G.L. c. 151B § 9, which vested once the MCAD's protracted delay approached the statute of limitations. See *Christo v. Boyle Ins. Agency*, 402 Mass. 815 (1988).

25. The Commonwealth's predominant regulatory interest extends equally to M.G.L. c. 272 § 99 and c. 214 § 1B. Plaintiff has already referred Benchling's undisclosed electronic surveillance

and call-recording practices to the Office of the Massachusetts Attorney General by letter dated October 6, 2025 addressed to Attorney General Andrea Joy Campbell . (Exhibit A.) These statutes protect Massachusetts residents from unlawful interception and invasion of privacy and carry both criminal and civil enforcement components. Because they embody strong public-policy and law-enforcement objectives, they cannot properly be resolved through confidential arbitration proceedings intended only for private contractual disputes.

26.     In addition, Plaintiff's role as SDR involved routinely making and receiving calls with other Massachusetts residents and business contacts through Benchling's Salesloft telephony system. Those individuals were likewise not notified that their calls were being recorded or stored. The alleged conduct therefore implicates not only Plaintiff's personal privacy, but also the privacy rights of numerous Massachusetts residents, underscoring that the violations alleged are matters of public concern under M.G.L. c. 272 § 99 and c. 214 § 1B. These are precisely the types of statutory interests—protecting the public against unlawful interception—that cannot be privately resolved through arbitration.

### IV. The Agreement's Scope Does Not Reach Statutory Privacy Torts

27.     Plaintiff's wiretap and invasion-of-privacy claims arise from undisclosed electronic recording and retention technology (Salesloft recordings), not from "terms or conditions of employment." Massachusetts courts construe arbitration clauses narrowly to avoid encompassing statutory torts that are independent of the employment contract's subject matter. *McInnes v. LPL Fin*. LLC, 466 Mass. 256 (2013).

28.     The Supreme Judicial Court has confirmed that "the arbitration agreement does not reach independent statutory or tort claims that are merely collateral to [the] employment relationship." Id. at 261–62. As in *McInnes*, where the SJC declined to compel arbitration of claims collateral

to an employment relationship, Plaintiff's wiretap and privacy claims concern post-formation surveillance activity, not any contractual obligation or workplace term.

29. Those counts therefore fall outside the scope of the arbitration clause and remain properly before the Massachusetts courts, whether in Superior Court or, if jurisdiction is retained, before this Court.

## V. Waiver by Litigation Conduct

30. Benchling removed this case to federal court, invoked Rule 12(b)(6) dismissal, and sought consolidation—all conduct incongruent with an intent to arbitrate and thereby constituting waiver under *Marie v. Allied Home Mortgage*, 402 F.3d 1, 14 (1st Cir. 2005). Benchling likewise participated in the Massachusetts Commission Against Discrimination ('MCAD') proceedings without invoking arbitration or reserving any right to do so, further evidencing waiver through delay and inconsistent conduct. As the First Circuit held, "the issue of waiver of the right to arbitrate by litigation conduct is presumptively an issue for the court, not the arbitrator." Id. at 13.

31. Benchling's removal and consolidation requests are precisely the kind of "litigation conduct" that waives arbitration when it prejudices the opposing party. Id. at 14.

32. Accordingly, Benchling has already waived any right it may have otherwise possessed to compel arbitration by its litigation conduct to date.

## VI. The Complaint Is Well-Pled and Meets Massachusetts' Plausibility Standard

33. Plaintiff's Complaint pleads exclusively Massachusetts causes of action, and Counts IV–VIII are supported by specific, date-stamped facts that easily satisfy the Commonwealth's plausibility standard. See *Iannacchino v. Ford Motor Co.*, 451 Mass. 623, 636 (2008). The First Circuit has similarly held that "[d]ismissal of a complaint pursuant to Rule 12(b)(6) is

inappropriate if the complaint provides fair notice to the defendants and states a facially plausible legal claim. The make-or-break standard … is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 19, 27 (1st Cir. 2011).

34. <u>Count IV</u> (Wrongful Termination in Violation of Public Policy) alleges that Plaintiff notified Human Resources on September 7, 2022, of medically supported intermittent leave under PFML and was terminated eight days later, on September 15, 2022. Plaintiff was also barred from commissionable work post-leave and denied restoration between April 18 and May 1, 2022—facts that plausibly state a discharge contravening Massachusetts public policy protecting medical leave and reasonable accommodation.

35. <u>Count V</u> (Promissory Estoppel) pleads specific promises by Plaintiff's manager in August 2022 to prepare for a promotion circa. December 2022, reliance actions (internal outreach and role exploration), and resulting detriment (termination and loss of an AE-track OTE of approximately $180,000 and additional stock-options).

36. <u>Count VI</u> (M.G.L. c. 272, § 99) alleges that Benchling configured Salesloft to auto-record employee calls from the Boston office without disclosure or all-party consent, created and retained audio files on non-carrier systems, and concealed these practices—facts that state an unlawful interception by device with no applicable carrier or tariffed-equipment exception. The "devices" in this context include computer hardware owned or leased by Benchling or its vendor Salesloft—including laptops, servers, and related equipment—as well as the software installed or operated on those machines.

37. <u>Count VII</u> (M.G.L. c. 214, § 1B) alleges undisclosed monitoring, storage, internal circulation, and potential external exploitation of recorded communications—constituting an

unreasonable and substantial intrusion on privacy.

38.     Count VIII (Intentional Infliction of Emotional Distress) alleges a pattern of outrageous conduct—including withholding commissionable work after medical leave, preventing Plaintiff from resuming his duties, making mid-quarter account changes, issuing false promotion assurances, and executing a summary termination days after a protected leave request—causing documented severe emotional distress.

39.     Taken together, these allegations provide the who, what, when, where, and how required by Mass. R. Civ. P. 8(a) and meet the plausibility standard articulated in Iannacchino. Dismissal under Rule 12(b)(6) is therefore unwarranted. Title III "ordinary-course monitoring" cases are inapposite; M.G.L. c. 272, § 99 contains no generalized business-purpose exception, and its narrow carrier carve-outs do not reach employer-deployed recording software.

40.     Accordingly, dismissal of Counts IV–VIII is unwarranted.

**VII. The Wiretap and Privacy Counts Are Independently Actionable Under Massachusetts Law**

41.     Benchling's reliance on *Aldrich v. Ruano*, 952 F. Supp. 2d 295 (D. Mass. 2013), is inapposite. *Aldrich* concerned a civil-rights dispute involving alleged misconduct by a government attorney; it did not interpret the Massachusetts Wiretap Act (M.G.L. c. 272, § 99) or the Massachusetts Privacy Statute (M.G.L. c. 214, § 1B) and has no bearing on undisclosed workplace recording and retention of communications by a private employer. This action pleads only state-law interception and privacy claims under §§ 99 and 1B.

42.     Benchling erroneously invokes federal Title III "ordinary-course monitoring" cases such as *Watkins*, *Arias*, and *Amati* to conflate eavesdropping (transient, real-time monitoring) with recording and retention (durable audio capture). That conflation fails entirely under

Massachusetts law. M.G.L. c. 272, § 99 criminalizes secret recording absent all-party consent and contains narrow, hardware-specific exclusions limited to carrier-furnished, tariffed telephony. It recognizes no generalized "ordinary-course business" defense. Plaintiff alleges that non-carrier software (Salesloft) was deliberately configured by Benchling to auto-record and store calls without disclosure or consent—facts that squarely trigger § 99. The "device" element is satisfied by the combination of employer or vendor computer hardware (laptops, servers, related equipment) and the recording software installed or operated on those machines.

43.     Benchling's reliance on the Telephone-Equipment Exception and cases such as *O'Sullivan, Dillon*, and *Peters* is equally misplaced. Those authorities involve monitoring conducted through carrier-furnished, tariffed equipment used in disclosed, quality-assurance contexts—not undisclosed, blanket software-based capture and retention of employee calls via non-carrier cloud tools. Under both Massachusetts and federal law, a "carrier" refers to a regulated entity that provides telecommunications transmission services to the public for hire—such as a telephone company operating under a filed tariff—not a private employer or software vendor operating internal systems. Neither Benchling nor SalesLoft qualifies as a carrier by any definition. Section 99's exclusion is both device- and carrier-specific, not a free-floating "business-purpose" license for employers to record and archive communications en masse. On the pleaded facts, the exception does not apply.

44.     The § 1B claim (Count VII) likewise alleges undisclosed monitoring, storage, internal circulation, and potential external exploitation of recorded communications. Whether such intrusion is "unreasonable, substantial, or serious" presents a fact-intensive question that cannot be resolved against Plaintiff at the pleading stage—particularly where any legitimate training purpose could have been achieved through consented or non-recording means. Benchling's

assertion that business-development calls are categorically "not private" sidesteps the allegations of hidden, durable capture by non-carrier systems.

45. Because M.G.L. c. 272, § 99 contains no "ordinary-course business" defense and its narrow carrier carve-outs do not reach employer-deployed recording software, and because § 1B's reasonableness balancing cannot be resolved on the pleadings, dismissal of Counts VI and VII is unwarranted. Secret audio capture and durable retention of workplace communications constitute a serious interference under M.G.L. c. 214, § 1B. Any purportable legitimate business interest can readily be served through consented or non-recording means; the statute does not authorize hidden recording at the unilateral discretion of non-parties.

46. Accordingly, Plaintiff's state-law privacy and wiretap claims are independently actionable under Massachusetts law and must proceed.

## VIII. Consolidation is Inappropriate

47. Civil Action No. 3:25-cv-30158-MGM concerns distinct federal statutory issues, including claims under the ADA and FMLA, whereas Civil Action No. 3:25-cv-30176-MGM (removed from Hampshire County Superior Court, Case No. 2580CV00126) pleads only Massachusetts statutory and common-law causes of action. The two cases involve different factual predicates, procedural postures, and governing legal frameworks.

48. Consolidation before resolving subject-matter jurisdiction and arbitrability would create confusion and prejudice by merging a removed state-law action still subject to a pending motion to remand with a separate, properly filed federal case. See Fed. R. Civ. P. 42(a) (permitting consolidation only when actions involve a common question of law or fact).

49. Because the cases arise under different statutes and procedural regimes, consolidation would not promote efficiency or fairness, and the Court should deny Benchling's request.

**Conclusion**

50. For the foregoing reasons, Plaintiff respectfully requests that the Court:

    a. Deny Defendant Benchling's Motion to Compel Arbitration; and/or to Partially Dismiss;

    b. Grant Plaintiff's Motion to Remand this action to the Massachusetts Superior Court for Hampshire County; and

    c. Grant such other and further relief as the Court deems just and proper, including limited discovery, if necessary, to evaluate the arbitration agreement's validity.

**Exhibits Attached:**

A. Plaintiff's October 6, 2025 Referral Notice to Massachusetts Attorney General Andrea Joy Campbell

B. Plaintiff's manager Christian (Haas-)Kwon's recruitment outreach to Plaintiff via LinkedIn

C. Benchling Arbitration Agreement

D. Declaration of Julian Ross (Plaintiff)

E. Benchling's Notice of Removal

F. Benchling's Motion to Compel Arbitration (from Defendant's filing ECF No. 6-2, Exhibit 1(A))

G. MCAD FY24 Report (excerpt)

Dated: October 27, 2025

                                          Respectfully Submitted,

                                          PLAINTIFF, PRO SE

                                          /s/ Julian Ross

                                          Julian Ross
                                          105 East Street
                                          Apt. B
                                          Hadley, MA 01035
                                          (413) 531-9810
                                          jross21@gmail.com
                                          Pro Se Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was filed through the Court's CM/ECF system, which will send notice electronically to all counsel of record.

      /s/ Julian Ross