UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 3:25-cv-30176-MGM

JULIAN ROSS,
    *Plaintiff*
v.

BENCHLING, INC.
    *Defendant*

**DECLARATION OF JULIAN ROSS IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION, TO PARTIALLY DISMISS, AND TO CONSOLIDATE**

1. I am the Plaintiff in this action. I submit this declaration (**Exhibit D**) in support of my Opposition to Defendant's Motion to Compel Arbitration or, in the Alternative, to Partially Dismiss and to Consolidate. The statements below are based on my personal knowledge.

2. On March 30, 2021, I was personally contacted through LinkedIn by Christian Haas-Kwon, a Sales Development Manager at Benchling, Inc. Mr. Haas-Kwon actively recruited me to join Benchling's sales organization. A true and correct copy of the recruitment message he sent to me on LinkedIn is attached as **Exhibit B** to my Opposition.

3. At no time during the recruitment process, interview rounds, or offer discussions did anyone at Benchling mention arbitration or any waiver of rights to a judicial forum. Benchling's communications emphasized growth opportunities, benefits, and company culture—not dispute resolution terms.

4. I verbally accepted an offer for Sales Development Representative during a telephone conversation with Christian Haas-Kwon, Benchling's Sales Development Manager, on or about

April 18, 2021. Immediately thereafter, I provided notice to my then-employer and began making new living and employment arrangements in reliance on the offer and acceptance.

5. Only after I had accepted the offer did Benchling send me a DocuSign onboarding packet weeks later, which included numerous forms and policy acknowledgments presented as required for beginning employment. The system required that each page be electronically signed before proceeding to the next. No option was provided to decline or modify any terms. The DocuSign workflow would not allow me to advance unless I electronically signed each signature field. There was no mechanism to strike or modify any clause, no "decline" option for the arbitration provision, and no opt-out window was offered or explained by Benchling.

6. TThe arbitration clause appeared in the middle of the employment agreement, labeled as pages 5 and 6. It was presented as an inseparable part of the larger document, not as a standalone or negotiable provision. I was not informed that it was optional or that it could be discussed or declined. Defendant's own Exhibit 1(A) to the Declaration of Sean Simerly, filed with its Motion to Compel Arbitration (ECF No. 11-2), confirms this structure: only pages 5 and 6 are included in Benchling's exhibit, while the remaining pages of the agreement are conspicuously omitted. The two pages titled "Arbitration Agreement" were labeled "Page 5" and "Page 6" of a longer employment agreement. The remainder of the agreement was not presented as negotiable, and I was required to accept the packet in its entirety to proceed. (**Exhibit C**)

7. At the time of signature on May 12, I had already accepted Benchling's offer, provided notice to my then-employer, made new living arrangements and was preparing to begin employment with Benchling on or about June 21. I understood that refusing to sign would prevent me from starting work, and that signing was a condition of employment and necessary for processing the rest of the Docusign agreement. No one at Benchling informed me that

arbitration was optional, subject to discussion, or that I could begin work without agreeing to it. My understanding from HR was that signing the complete packet—including the arbitration pages—was a condition of employment and necessary to meet the June 21, 2021 start date.

8. No one at Benchling discussed or explained the arbitration clause to me. Benchling did not provide me with the JAMS Employment Arbitration Rules, any fee schedules, or any explanation that an arbitrator—rather than a court—might decide threshold issues of arbitrability. The packet did not include copies of any rules; at most there was a bare reference that did not supply the rules themselves.

9. Throughout my employment, I worked both remotely from my home in Massachusetts and from Benchling's offices located in Boston. All relevant events occurred solely within Massachusetts. I never traveled outside the Commonwealth for any employment purpose whatsoever while working for Benchling. I performed all work using a Massachusetts telephone number and internet connection, and many of my calls and prospecting efforts were focused on Massachusetts-based biotechnology clients and contacts in the Greater Boston/Cambridge area.

10. In the ordinary course of my role, I regularly called Massachusetts residents and businesses. Those call participants—and I myself—were not notified that our calls were being recorded or stored by Benchling.

11. In or around September 2022, my direct supervisor, Sales Development Manager for the Boston office, Christian Haas-Kwon, informed me and other members of my team during an impromptu conversation that sales calls made or received through the "Salesloft" calling platform were often being recorded and stored on computer servers controlled by Benchling and/or its vendor, Salesloft, as the direction of Director of Sales Development Sean Simerly and senior management. This was the first time I learned that recordings of my calls existed. I had

never been informed of, nor asked to consent to, any such recording during my employment. Mr. Haas-Kwon seemed concerned and stated, in substance, that Benchling "could be in trouble" if these practices became known to prospects and that the company should have been making proper disclosures and deleting recordings obtained without consent. At no point during my employment did Mr. Haas-Kwon, Mr. Simerely or any other manager at Benchling disclose, explain, or provide details about how these recording policies or procedures were structured or operated. Nor did Benchling ever seek consent or provide real-time notice that any of my calls were being recorded.

12. After my termination in September 2022, I filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination (MCAD) in June 2023. Due to the MCAD's prolonged delay, understaffing and large backlog of cases (**Exhibit G**), I filed a civil complaint in Hampshire County Superior Court on September 2, 2025, asserting only Massachusetts statutory and common-law claims. My MCAD charge remained pending without findings for an extended period. Based on MCAD's backlog and delays, I withdrew to preserve my claims and filed this civil action asserting only Massachusetts statutory and common-law causes of action.

13. On October 6, 2025, I submitted a formal referral to the Massachusetts Attorney General via certified mail, reporting Benchling's undisclosed interception and recording of employee and client telephone communications, requesting regulatory oversight and investigation. A true and correct copy of my referral letter is attached as **Exhibit A** to my Opposition. I did so out of concern for systemic and potentially widespread violations of both M.G.L. c. 272 § 99 and M.G.L. c. 214 § 1B, which protect Massachusetts residents from unlawful surveillance and privacy violations. Based on the disclosures from Christian Haas-Kwon in or around September 2022, I have reason to believe that Benchling recorded thousands of calls of Massachusetts

residents, employees and prospective customers alike, without their consent or providing proper notice.

14. Benchling has since filed multiple motions in both my District Court case (3:25-cv-30176), as well as my Hampshire County Superior Court case (2580CV00126)—removing my state case to federal court (**Exhibit E**), invoking Rule 12(b)(6) dismissal, and seeking consolidation (**Exhibit F**)—all before moving to compel arbitration. In addition to removal, Benchling sought Rule 12(b)(6) dismissal on the merits and requested consolidation, before moving to compel arbitration. From my perspective, this sequence reflected an intent to litigate in court rather than insist on arbitration.

15. I also have documented hearing limitations and auditory-processing challenges. I require written communications and/or live captioning to effectively participate in complex discussions. Phone-only or rapid, unaccommodated proceedings substantially impair my ability to participate fully.

16. I never knowingly or voluntarily agreed to waive my statutory rights to a judicial forum under Massachusetts law. The arbitration clause was imposed under circumstances of unequal bargaining power, without notice, and under conditions that made employment contingent upon immediate acceptance.

17. I make this declaration to verify these facts and to support my request that the Court deny Defendant's Motion to Compel Arbitration, deny partial dismissal, and deny consolidation.

18. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: October 27, 2025

                                            Respectfully Submitted,

                                            PLAINTIFF, PRO SE

                                            /s/ Julian Ross

                                            Julian Ross
                                            Plaintiff, Pro Se
                                            105 East Street
                                            Apt. B
                                            Hadley, MA 01035
                                            (413) 531-9810
                                            jross21@gmail.com