# COMMONWEALTH OF MASSACHUSETTS

Hampshire, ss.

**Superior Court Department
Civil Action No. 2580CV0126**

I, Daniel R. Carey, Clerk of Courts for Hampshire aforesaid, hereby certify that the attached are true copies of the Docket Entries and Pleadings in Julian Ross vs. Benchling, Inc., Hampshire County Civil Action No. 2580CV0126.



Witness my hand and the seal of the Superior Court Department of the Trial Court of the Commonwealth of Massachusetts this 23rd day of October 2025.

Daniel R. Carey
Clerk of Courts

**COMMONWEALTH OF MASSACHUSETTS**
**HAMPSHIRE COUNTY**
**Docket Report**

**2580CV00126 Ross, Julian vs. Benchling, Inc.**

| | | | |
|---|---|---|---|
| **CASE TYPE:** | Torts | **FILE DATE:** | 09/02/2025 |
| **ACTION CODE:** | B22 | **CASE TRACK:** | F - Fast Track |
| **DESCRIPTION:** | Employment Discrimination | | |
| **CASE DISPOSITION DATE:** | | **CASE STATUS:** | Open |
| **CASE DISPOSITION:** | Pending | **STATUS DATE:** | 09/02/2025 |
| **CASE JUDGE:** | | **CASE SESSION:** | Civil A |

## PARTIES

| | |
|---|---|
| **Plaintiff**<br>Ross, Julian<br>105 East Street<br>Apt B<br>Hadley, MA 01035 | **Attorney**                          **PROPER**<br>Pro Se<br>Massachusetts Bar<br>Added Date: 09/02/2025 |
| **Defendant**<br>Benchling, Inc.<br>155 FEDERAL STREET<br>SUITE 700<br>BOSTON, MA 02110 | **Attorney**                         **045760**<br>Conrad John Bletzer<br>Bletzer and Bletzer, PC<br>Bletzer and Bletzer, PC<br>300 Market St<br>Brighton, MA 02135<br>Work Phone (617) 254-8900<br>Added Date: 10/10/2025 |

## FINANCIAL DETAILS

| Date | Fees/Fines/Costs/Charge | Assessed | Paid | Dismissed | Balance |
|---|---|---|---|---|---|
| 09/02/2025 | Civil Filing Fee (per Plaintiff) Receipt: 8910 Date: 09/02/2025 | 240.00 | 240.00 | 0.00 | 0.00 |
| 09/02/2025 | Civil Security Fee (G.L. c. 262, § 4A) Receipt: 8910 Date: 09/02/2025 | 20.00 | 20.00 | 0.00 | 0.00 |
| 09/02/2025 | Civil Surcharge (G.L. c. 262, § 4C) Receipt: 8910 Date: 09/02/2025 | 15.00 | 15.00 | 0.00 | 0.00 |
| 09/09/2025 | Fee for Blank Summons or Writ (except Writ of Habeas Corpus) MGL 262 sec 4b Receipt: 8919 Date: 09/09/2025 | 5.00 | 5.00 | 0.00 | 0.00 |
| | **Total** | **280.00** | **280.00** | **0.00** | **0.00** |

COMMONWEALTH OF MASSACHUSETTS
HAMPSHIRE COUNTY
Docket Report

| | | INFORMATIONAL DOCKET ENTRIES | |
|---|---|---|---|
| **Date** | **Ref** | **Description** | **Judge** |
| 09/02/2025 | 1 | Complaint and demand for jury trial. | |
| 09/02/2025 | 2 | Civil action cover sheet filed. | |
| 09/02/2025 | | Case assigned to:<br>DCM Track F - Fast Track was added on 09/02/2025 | |
| 09/02/2025 | | EDocument sent:<br>A Tracking Order was generated and sent to:<br>Plaintiff: Julian Ross 105 East Street Apt B, Hadley, MA 01035<br>Defendant: Benchling, Inc. 155 FEDERAL STREET SUITE 700, BOSTON, MA 02110 | |
| 09/30/2025 | 3 | Service Returned for<br>Defendant Benchling, Inc.: Service through person in charge / agent; | |
| 10/09/2025 | 4 | Attorney appearance electronically filed. On this date Conrad John Bletzer, Jr., Esq. added for Defendant Benchling, Inc. | |
| 10/09/2025 | 5 | Defendant Benchling, Inc.'s Notice of<br>Filing Notice of Removal | |

Date Filed 9/2/2025 3:01 AM
Superior Court - Hampshire
Docket Number

1

RECEIVED

COMMONWEALTH OF MASSACHUSETTS
HAMPHIRE COUNTY SUPERIOR COURT

CIVIL ACTION NO. _____

|  |  |  |
|---|---|---|
| JULIAN ROSS, | ) | |
| Plaintiff | ) | |
| | ) | COMPLAINT AND DEMAND |
| v. | ) | FOR JURY TRIAL |
| | ) | |
| BENCHLING, INC. | ) | |
| Defendant | ) | |

1.     Plaintiff Julian Ross brings this action against Defendant Benchling, Inc. for disability

discrimination, failure to accommodate, retaliation, interference with protected leave, and

unlawful surveillance and interception of communications in violation of state law. Specifically,

Defendant violated: (1) M.G.L. c. 151B, § 4(16) by discriminating against Plaintiff on the basis

of disability and failing to provide reasonable accommodations; (2) M.G.L. c. 151B, § 4(4) by

retaliating against Plaintiff for engaging in protected activity, including requesting

accommodations and medical leave; (3) Massachusetts Paid Family and Medical Leave Act

(PFMLA), M.G.L. c. 175M, § 9(d) by terminating Plaintiff in close temporal proximity to his

request for protected intermittent medical leave; (4) Massachusetts common law by wrongfully

terminating Plaintiff in violation of the public policy protecting employees' rights to medical

leave and reasonable accommodation; (5) Massachusetts common law by making and then

repudiating material promises of career advancement upon which Plaintiff reasonably relied to

his detriment; (6) M.G.L. c. 272, § 99 by unlawfully intercepting and recording Plaintiff's

telephone communications without the knowledge or consent of all parties; (7) M.G.L. c. 214, §

1B by unreasonably and substantially interfering with Plaintiff's privacy through undisclosed

monitoring and storage of his communications; and (8) Massachusetts common law by engaging

in extreme and outrageous conduct that intentionally or recklessly caused Plaintiff severe

emotional distress.

<u>Jurisdiction</u>

2.      This Court has jurisdiction over this matter pursuant to M.G.L. c. 212, § 4, which

provides the Superior Court with original jurisdiction over civil actions in which the amount in

controversy exceeds $25,000. Venue is proper in this Court because Plaintiff resides in

Hampshire County, Massachusetts, and Defendant conducts business and employed Plaintiff in

Massachusetts, where many of the acts and omissions giving rise to this action occurred.

<u>Parties</u>

3.      Plaintiff Julian Ross resides in Hampshire County, Massachusetts. At all relevant times,

Plaintiff was employed by Defendant and performed work within, and for the benefit of, the

Commonwealth of Massachusetts.

4.      Defendant Benchling, Inc. is a corporation organized under the laws of the state of

Delaware, with its principal place of business at 680 Folsom Street, 8th Floor, San Francisco, CA

94107, and employs over 100 employees. Defendant is registered to do business in

Massachusetts and employs more than 100 individuals, qualifying as an "employer" in all

statutes related to this action, including the PFMLA, and M.G.L. c. 151B.

<u>Factual Allegations</u>

5.      Plaintiff Julian Ross began employment with Defendant on or about June 21, 2021, in the

full-time position of Sales Development Representative ("SDR") at Defendant Benchling, Inc.'s

Massachusetts location at 100 Summer Street, 23rd Floor, Boston, Massachusetts 02110, serving

enterprise clients across various US and global territories.

6.     Defendant Benchling is a cloud-based software platform for biotechnology research and development that provides software tools for the research and development of cutting edge therapeutics and pharmaceuticals. Its clients include multinational pharmaceutical companies and world-class academic institutions.

7.     Plaintiff was classified as a non-exempt employee, with an hourly base wage of $31.25 and was also eligible to earn commissions and bonuses related to meeting certain performance metrics. The target annual incentive compensation was set at $30,000.00, with no cap on earnings. Additionally, he was granted incentive stock options (ISOs) as part of his employment contract, alongside a benefits package, as part of his employment agreement.

8.     In or around March 2021, Benchling's SDR manager Christian Haas-Kwon personally recruited Plaintiff via LinkedIn.

9.     Mr. Haas-Kwon represented to Plaintiff that Benchling was "doubling this year," that there was "lots of room to grow vertically or laterally," and that employment with Benchling offered "awesome perks and benefits," including unlimited PTO, wellness stipends, and advancement opportunities.

10.     Beyond these specific assurances, Mr. Haas-Kwon emphasized Benchling's status as a rapidly scaling, venture-capital-backed pre-IPO company, portraying the position as a rare opportunity. He represented that joining Benchling would justify Plaintiff's leaving secure employment and would position him on a long-term trajectory of advancement and exceptional internal mobility.

11.     Plaintiff reasonably relied on these representations in agreeing to enter the interview process, advancing through multiple interview rounds, and ultimately accepting employment with Benchling, rather than pursuing other external opportunities available at that time.

12.     In January, 2022, Plaintiff notified Defendant of his need to take a medical leave of

absence due to disabling health conditions including, but not limited to, depression, anxiety, and

severe insomnia. Plaintiff was fully eligible for leave under PFMLA. Defendant approved the

leave request, and Plaintiff applied for and was granted paid leave benefits under PFMLA by the

Massachusetts Department of Family and Medical Leave (DFML). In connection with his

application, Plaintiff provided Defendant with a "Certification of Your Serious Health

Condition" form dated February 6, 2022, completed by his health care provider. This form

certified Plaintiff's need for continuous medical leave beginning January 24, 2022, and ending

April 18, 2022.

13.     Upon returning from medical leave on April 18, 2022, Plaintiff was informed that he

would be assigned new sales accounts effective May 1, 2022, the start of the second fiscal

quarter.

14.     Between April 18 and May 1, Defendant barred Plaintiff from resuming core duties,

working active accounts or earning commissions. Although Plaintiff had been medically cleared

and was fully prepared with a planned return date of April 18, Defendant instructed him to wait

until May 1 to regain access to commission-earning responsibilities and resume normal work

functions.

15.     Shortly after returning to work, Plaintiff informed Defendant that his healthcare provider

had advised he may require intermittent medical leave in the future but that no specific dates had

been identified. Plaintiff made clear that he would notify Defendant promptly should the need

arise.

16.     On or about May 11, 2022, Plaintiff formally notified Defendant that his physician had

prescribed intermittent leave on an as-needed basis. Plaintiff also provided a written

accommodation request from his healthcare provider recommending continued remote work flexibility to manage his medical conditions. Plaintiff was eligible for such leave under the PFMLA.

17.     Defendant approved the remote work accommodation. This occurred during a period in which Defendant was transitioning employees from remote to in-office work. Plaintiff's work-from-home status, although medically justified, distinguished him from many of his peers.

18.     In or around July 2022, Defendant held a cross-office Sales Development Representative ("SDR") meeting over Zoom, led by Director of Sales Development Sean Simerly, with SDRs from Boston, San Francisco, and Zurich. The purpose of the meeting was to address widespread employee dissatisfaction with Defendant's return-to-office ("RTO") policies. Unlike most other teams at Benchling, which were subject to a flexible and scarcely enforced three-day in-office expectation, SDRs were uniquely, and for unexplained reasons, required to be physically present in the office at least four days per week, ideally five, according to Mr. Simerly. During the meeting, nearly all of the SDRs expressed frustration with the policy and complained that it was unfair and burdensome compared to the treatment of other departments. Although Plaintiff had already been granted a medical accommodation permitting him to work remotely on a full-time basis, he attended the meeting in solidarity with his colleagues, advocating for broader work-from-home ("WFH") policies consistent with the expectations applied to other teams across the company. Plaintiff reasonably believed that his participation was protected activity in support of workplace fairness. Upon information and belief, Mr. Simerly, who was under pressure to demonstrate strict RTO enforcement to senior executives, including CEO Sajith Wickramasekara, viewed Plaintiff's solidarity and public alignment with the dissenting employees as a challenge to his authority and a source of personal frustration. Another SDR,

Max Eddy, who also had a remote-work medical accommodation but chose not to attend the meeting, was neither terminated nor disciplined and remains employed by Defendant. Plaintiff reasonably believes that his participation in the July 2022 meeting contributed to Defendant's retaliatory animus and ultimately factored into the decision to terminate his employment.

19.     Following his return from medical leave, Plaintiff observed that he was no longer being afforded equal opportunities for success relative to other members of the Sales Development Representative (SDR) team. Unlike his peers, Plaintiff was excluded from attending in-person industry conferences—events which routinely generated high-value leads. Moreover, he was excluded from team-building and leadership opportunities, including interviewing candidates and planning team events, which were instead given to more junior, less experienced members of his team.

20.     Plaintiff was also subjected to disruptive account changes during the middle of an active fiscal quarter, with several key accounts reassigned to other SDRs without explanation, undermining Plaintiff's sales momentum and opportunity pipeline.

21.     Despite these impediments, Plaintiff's performance during the second fiscal quarter (May through July 2022) was exceptional. He achieved 100% of his individual and team sales targets and was responsible for generating the majority of the revenue bookings attributed to the Enterprise segment of the SDR team.

22.     In August 2022, just weeks before Plaintiff's termination, Plaintiff's direct manager, Christian Haas-Kwon, encouraged him to begin preparing for a promotion expected to occur in or around December 2022, near Plaintiff's 18-month mark. Mr. Haas-Kwon emphasized Plaintiff's strong performance and advised him to explore any number of internal roles of interest, including those in sales or marketing. He provided Plaintiff with specific direction on

the promotion process and encouraged outreach to other teams—a directive Plaintiff acted upon by contacting colleagues and expressing interest in future openings.

23.     On or about September 7, 2022, Plaintiff met with Emily Kirsch, Defendant's HR Generalist, and informed her that he would require another period of intermittent medical leave in the coming weeks. Ms. Kirsch acknowledged this request and guaranteed support, reiterating Defendant's accommodations and full commitment to supporting Plaintiff during his leave. She advised Plaintiff to share the details with his manager, Mr. Haas-Kwon, during their next routine meeting on September 15.

24.     On September 15, 2022, only eight days later, Plaintiff attended what he was led to believe would be his routine weekly "one-on-one" meeting with Mr. Haas-Kwon, where he planned to disclose and discuss the medical leave, according to Ms. Kirsch's direction. He was surprised to find Maggie Lee, an HR representative, also in attendance. Within minutes and without prior notice, Plaintiff was summarily terminated from his employment. When Plaintiff asked for the reason, Mr. Haas-Kwon vaguely cited "performance" and then immediately exited the meeting. Ms. Lee then admitted she was unaware of any specific performance issues and stated unequivocally that she would follow up with more information. No such follow-up ever occurred.

25.     Defendant never engaged in the legally required interactive process with Plaintiff regarding his September 7 accommodation and intermittent leave request, nor did it provide any reasonable accommodation prior to his termination. Instead, Defendant terminated Plaintiff just days after he invoked his rights under the PFMLA.

26.     Upon information and belief, none of the other seven Boston-based SDRs were terminated around that time, and at least one or more of them had not met their individual or

Date Filed 9/2/2025 3:01 AM
Superior Court - Hampshire
Docket Number

team targets for the second fiscal quarter, as well as other prior fiscal quarters. Plaintiff also understands that none of the other team members generated sales pipeline revenue performance comparable to his own.

27.     Plaintiff was the most senior Boston SDR at the time of his termination, with substantially more experience and responsibilities than his peers. At all times prior to and through his termination, Plaintiff was qualified for his position, performed his duties satisfactorily, and was never formally disciplined.

28.     At no point did Plaintiff's disability pose any risk of harm to himself or others in the workplace, and he remained fully capable of performing the essential functions and tasks of his role, with or without reasonable accommodation.

29.     Defendant regarded Plaintiff as having a disability, and Plaintiff had a documented history of serious and persistent health conditions that qualified as a protected disability under state law.

30.     In the months leading up to his termination, and throughout the second and third fiscal quarters, many, or possibly all, of Plaintiff's sales calls were secretly recorded and stored by Defendant using its default SalesLoft telephone-dialing configuration. These secret audio recordings, obtained without Plaintiff's knowledge, consent or control, which Defendant used for internal performance monitoring and training, along with emails, presentations, and other materials, capture Plaintiff's competence, professionalism, and positive rapport with clients and colleagues, and are expected to serve as compelling evidence of his performance and character during discovery.

31.     Plaintiff only recently discovered that Defendant's recording practices constituted unlawful interceptions under state law. Plaintiff had no reasonable opportunity to discover the

Date Filed 9/2/2025 3:01 AM
Superior Court - Hampshire
Docket Number

illegality earlier because Defendant concealed the nature of its recording practices, failed to provide any notice or training, and never obtained Plaintiff's informed consent. Plaintiff reasonably relied on Defendant's representations and omissions regarding its call monitoring and recording practices and did not investigate their legality until recently, when he pieced together that these practices violated state law.

32.   Defendant's undisclosed recording practices violated state law, including M.G.L. c.272 § 99 and M.G.L. c. 214 § 1B.

33.   As a result of the above-described violations of state law, Defendant is liable to Plaintiff for back pay, front pay, unpaid wages and commissions, compensatory and punitive damages, emotional distress damages, and all other remedies available under law.

34.   Plaintiff has complied with all administrative and procedural prerequisites to filing this action, including those set forth in M.G.L. c. 151B, §5.

<u>Count I - Disability Discrimination (M.G.L. c. 151B, § 4(16))</u>

35.   Plaintiff repeats and incorporates by reference all preceding allegations as if fully set forth herein.

36.   At all relevant times, Plaintiff was a qualified disabled person within the meaning of M.G.L. c. 151B, § 1(16) and was capable of performing the essential functions of his position with or without reasonable accommodation.

37.   Defendant Benchling, Inc. is an employer as defined by M.G.L. c. 151B, § 1(5) and is subject to the requirements of Chapter 151B.

38.   Defendant was aware of Plaintiff's disability and medical conditions and received timely, documented requests for reasonable accommodations, including medical leave and remote work flexibility.

39.     Defendant failed to engage in the required interactive dialogue with Plaintiff and failed to reasonably accommodate his known disability, in violation of its statutory duties.

40.     Defendant ultimately terminated Plaintiff in whole or in part because of his disability and/or because he sought accommodation for it.

41.     As a direct and foreseeable result of Defendant's unlawful discrimination, Plaintiff has suffered loss of income, loss of employment benefits, emotional distress, and other compensable injuries.

42.     Defendant's conduct was willful, knowing, and/or undertaken with reckless disregard of Plaintiff's rights under Massachusetts law, entitling Plaintiff to compensatory and punitive damages, as well as reasonable attorneys' fees and costs under M.G.L. c. 151B, § 9.

<u>Count II - Retaliation (M.G.L. c. 151B, § 4(4))</u>

43.     Plaintiff repeats and incorporates by reference all preceding allegations as if fully set forth herein.

44.     Plaintiff engaged in protected conduct under M.G.L. c. 151B, including but not limited to: (a) requesting reasonable accommodations for his disabling conditions; (b) requesting and exercising medical leave; and (c) participating in a July 2022 SDR team meeting in solidarity with colleagues to oppose Defendant's disparate return-to-office policy, which imposed stricter requirements on SDRs than on other departments. Plaintiff reasonably believed the policy was discriminatory, unfair, and inconsistent with the rights of employees to be free from disability-based discrimination and retaliation under Massachusetts law.

45.     Shortly after requesting additional intermittent leave and reaffirming his accommodation needs, Plaintiff was terminated without warning or substantiated performance rationale.

Date Filed 9/2/2025 3:01 AM
Superior Court - Hampshire
Docket Number

46.    Defendant's termination of Plaintiff was retaliatory in nature and in violation of M.G.L. c. 151B, § 4(4), which prohibits employers from retaliating against any individual for asserting their rights under the statute.

47.    As a result of Defendant's unlawful retaliation, Plaintiff has sustained significant financial and emotional damages, including lost wages, lost benefits, reputational harm, and emotional distress.

48.    Defendant's retaliatory actions were taken with malice or reckless disregard for Plaintiff's rights, entitling him to compensatory and punitive damages, as well as attorneys' fees and costs under M.G.L. c. 151B, § 9.

<u>Count III - Retaliation Under PFMLA (M.G.L. c. 175M, § 9(d))</u>

49.    Plaintiff repeats and incorporates by reference all preceding allegations as if fully set forth herein.

50.    At all relevant times, Plaintiff was a covered employee entitled to leave under the Massachusetts Paid Family and Medical Leave Act (PFMLA), M.G.L. c. 175M, and Defendant was a covered employer.

51.    In January 2022, Plaintiff applied for and was granted paid medical leave benefits through the Massachusetts Department of Family and Medical Leave (DFML). Defendant approved his leave and was aware of the underlying qualifying health condition.

52.    In addition to exercising his own PFMLA rights, Plaintiff also engaged in protected activity by joining a July 2022 SDR team meeting in solidarity with colleagues to oppose Defendant's stricter return-to-office policy, which Plaintiff reasonably believed was unfair, discriminatory, and inconsistent with the equal rights of employees under Massachusetts law, including those requiring medical leave or accommodations.

53.    On or about September 7, 2022, Plaintiff notified Defendant's HR personnel of his intent to take an additional period of intermittent PFMLA leave in the coming weeks, consistent with medical guidance.

54.    Just eight days later, on September 15, 2022, Defendant abruptly terminated Plaintiff's employment without prior warning or substantiated performance documentation.

55.    Plaintiff's termination occurred in close temporal proximity to his protected request for PFMLA leave and after his prior exercise of PFMLA rights earlier in the year.

56.    Defendant's conduct constitutes retaliation in violation of M.G.L. c. 175M, § 9(d), which prohibits employers from taking any adverse action against an employee for exercising rights under the Act or applying for leave benefits.

57.    As a result of Defendant's unlawful retaliation, Plaintiff has suffered lost wages, lost benefits, emotional distress, reputational harm, and other compensable injuries.

58.    Pursuant to M.G.L. c. 175M, § 9(d) and M.G.L. c. 149, § 150, Plaintiff is entitled to treble damages, reasonable attorneys' fees and costs, pre- and post-judgment interest, and any other relief This Court deems just and proper.

### Count IV - Wrongful Termination in Violation of Public Policy

59.    Plaintiff repeats and incorporates by reference all preceding allegations as if fully set forth herein.

60.    Massachusetts recognizes a narrow exception to the at-will employment doctrine where an employee is terminated for reasons that violate a clearly established public policy.

61.    It is the public policy of the Commonwealth of Massachusetts to protect the rights of employees to take protected medical leave, to seek reasonable accommodations for disabling health conditions, and to be free from retaliation for exercising rights guaranteed under state law.

62.     Plaintiff was terminated by Defendant on September 15, 2022, just days after notifying Defendant of his intent to take further protected medical leave under the PFMLA and M.G.L. c. 151B.

63.     Plaintiff's termination was motivated, in whole or in part, by his refusal to forgo these rights and by his attempt to exercise legally protected medical leave and accommodation rights, conduct which is explicitly protected under Massachusetts public policy.

64.     Defendant's conduct constitutes wrongful discharge in violation of public policy.

65.     As a direct and proximate result of Defendant's unlawful termination, Plaintiff has suffered damages including lost wages, lost benefits, emotional distress, and reputational harm.

66.     Plaintiff is entitled to compensatory damages and all other relief This Court deems just and proper, including punitive damages where appropriate.

67.     This claim is premised on independent public policies embodied in M.G.L. c. 175M (PFMLA) and the Commonwealth's privacy and wiretapping protections (M.G.L. c. 214, § 1B; M.G.L. c. 272, § 99), separate and apart from M.G.L. c. 151B. It is pleaded in the alternative to preserve Plaintiff's rights in the event statutory remedies are determined not to provide complete relief.

<u>Count V - Promissory Estoppel</u>

68.     Plaintiff repeats and incorporates by reference all preceding allegations as if fully set forth herein.

69.     Defendant, through its authorized agents including Christian Haas-Kwon during Plaintiff's recruitment in 2021 and during his tenure throughout 2022, made clear and repeated promises and assurances that Plaintiff's employment with Benchling would offer significant growth opportunities, including vertical or lateral advancement.

70.    During recruitment in 2021, Defendant's manager, Christian Haas-Kwon, represented that Benchling was "doubling this year," that there was "lots of room to grow vertically or laterally," and that employment offered career mobility, benefits, and advancement opportunities. Plaintiff reasonably relied on these representations in pursuing and accepting employment with Benchling rather than other available opportunities.

71.    In or around August 2022, Plaintiff's direct supervisor, Christian Haas-Kwon, acting on behalf of Defendant, advised Plaintiff to begin preparing for a promotion expected to occur in or around December 2022, at Plaintiff's 18-month employment mark.

72.    Mr. Haas-Kwon explicitly acknowledged Plaintiff's outstanding performance during the second fiscal quarter, advised him of the internal mobility process, and directed him to begin identifying and exploring roles of interest, including positions in sales or marketing.

73.    Relying on this directive, Plaintiff undertook concrete steps toward internal advancement, including messaging team members, engaging in exploratory conversations, and initiating early preparations for internal applications.

74.    At no time did Defendant or Mr. Haas-Kwon indicate that Plaintiff was at risk of disciplinary action, demotion, or termination. On the contrary, Plaintiff was led to believe that he was on track for advancement based on performance and tenure.

75.    Plaintiff reasonably and foreseeably relied on these representations to his detriment, by investing time and energy into pursuing roles within Defendant's organization and refraining from seeking external employment opportunities.

76.    Defendant's subsequent termination of Plaintiff, without any notice, explanation, or performance documentation, constituted a breach of the reasonable expectations created by Defendant's own agent, and rendered Plaintiff's reliance harmful and damaging.

77.     As a direct and proximate result of this detrimental reliance, Plaintiff has suffered

financial losses, reputational harm, emotional distress, and lost opportunity for advancement,

including the loss of expected promotion to an Account Executive or similar role with

substantially increased on-target earnings ('OTE') of $180,000+, and additional equity grants.

78.     Plaintiff is entitled to compensatory damages and such other relief as the Court may deem

just and proper.

<u>Count VI - Unlawful Interception of Communications (M.G.L. c. 272, § 99)</u>

79.     Plaintiff repeats and incorporates by reference all preceding allegations as if fully set

forth herein.

80.     Massachusetts law requires the consent of all parties to the interception or recording of

wire and oral communications. M.G.L. c. 272, § 99.

81.     Defendant Benchling, Inc. intentionally intercepted, caused to be intercepted, or secretly

recorded Plaintiff's telephone communications, including business development and client calls

placed through SalesLoft, by means of a device, without the consent of all parties to those

communications.

82.     Defendant failed to disclose its default call-recording practices to Plaintiff or the call

recipients, failed to obtain written or verbal consent, and affirmatively concealed the existence

and scope of such practices.

83.     Plaintiff reasonably relied on Defendant's omissions and was unaware that his

communications were being secretly recorded and stored. He only recently discovered that

Defendant's conduct constituted unlawful interception under Massachusetts law.

84.     Defendant's unlawful conduct deprived Plaintiff of his statutory rights and constituted a

substantial invasion of privacy.

Page 15 of 19

85.     Pursuant to M.G.L. c. 272, § 99(Q), Plaintiff is entitled to actual damages, punitive damages, attorney's fees, and costs.

### Count VII - Invasion of Privacy (M.G.L. c.214, § 1B)

86.     Plaintiff repeats and incorporates by reference all preceding allegations as if fully set forth herein.

87.     Massachusetts law protects individuals from unreasonable, substantial, or serious interference with their privacy. M.G.L. c.214, § 1B.

88.     Defendant knowingly and intentionally engaged in undisclosed monitoring and storage of Plaintiff's communications, including telephone call recordings, metadata, and related electronic information, without his knowledge or consent.

89.     Defendant used and disclosed these stored communications internally for performance monitoring, training, and other purposes beyond the scope of any authorized access.

90.     These undisclosed practices constituted an unreasonable and serious interference with Plaintiff's privacy rights under Massachusetts law.

91.     Plaintiff did not become aware of the unlawful nature of these practices until recently, as Defendant affirmatively concealed its recording and storage activities and never provided notice or sought consent.

92.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages including emotional distress, reputational harm, and loss of dignity, and is entitled to compensatory damages, punitive damages, attorney's fees, and costs.

### Count VIII - Intentional Infliction of Emotional Distress (Common Law)

93.     Plaintiff repeats and incorporates by reference all preceding allegations as if fully set forth herein.

94.    At all relevant times, Defendant was aware that Plaintiff suffered from serious medical conditions, including depression, anxiety, and insomnia, and that Plaintiff had taken protected leave to manage these conditions.

95.    Despite this knowledge, Defendant engaged in a pattern of conduct designed to undermine, isolate, and eventually terminate Plaintiff, including: withholding commissionable work upon his return from leave; excluding him from conferences and internal advancement opportunities; reassigning accounts without explanation; misrepresenting his promotion prospects; and terminating him abruptly just eight days after he informed HR of his need for additional medical leave.

96.    Plaintiff was terminated without notice, without prior discipline, and without a documented performance rationale, despite being medically cleared and having achieved 100% of quota and major pipeline contribution in the quarter preceding his termination.

97.    This conduct, particularly the timing of Plaintiff's termination in close proximity to a protected leave request, was intentional, outrageous, and committed with reckless disregard for Plaintiff's emotional well-being and legal rights.

98.    In addition, Defendant's undisclosed interception, recording, and storage of Plaintiff's communications, separate and apart from the termination decision, was extreme and outrageous and independently caused severe emotional distress.

99.    As a direct and foreseeable result of Defendant's conduct, Plaintiff suffered severe emotional distress, including worsening depression, anxiety, sleep disruption, diminished self-worth, and mental health deterioration requiring ongoing treatment and counseling.

100.    Defendant is liable for general and special damages arising from this conduct, including compensatory damages for pain and suffering, emotional distress, and mental anguish.

## Reservation of Federal Rights

101.    Plaintiff repeats and incorporates by reference all preceding allegations as if fully set forth herein.

102.    Plaintiff expressly reserves all rights and causes of action arising under federal law, including but not limited to: the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.; the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq.; the Federal Wiretap Act, 18 U.S.C. §§ 2511-2520; and the Stored Communications Act, 18 U.S.C. §§ 2701-2707.

103.    Plaintiff does not assert such federal claims in this Complaint in order to maintain jurisdiction in this Court, but expressly preserves them for filing in an appropriate forum. Nothing in this pleading shall be construed as a waiver, abandonment, or forfeiture of Plaintiff's rights under federal law, including claims arising from Defendant's unlawful surveillance, interception, recording, and storage of Plaintiff's communications.

## Prayer for Relief

104.    WHEREFORE, Plaintiff Julian Ross respectfully requests that This Court enter judgment in his favor and against Defendant Benchling, Inc., and grant the following relief:

105.    Back pay in the form of lost wages, commissions, bonuses, stock options, and other compensation and benefits to which Plaintiff would have been entitled but for Defendant's unlawful conduct;

106.    Front pay in lieu of reinstatement, including future lost wages and diminished earning capacity;

107.    Liquidated damages pursuant in an amount equal to the sum of lost wages, interest, and other compensation;

108.    Treble damages pursuant to M.G.L. c. 149, § 150 and the PFMLA, M.G.L. c. 175M,

§ 9(d);

109.    Compensatory damages pursuant to the PFMLA (M.G.L. c. 175M, § 9(d)), M.G.L. c.

151B, and Massachusetts common law, including damages for emotional distress, mental

anguish, reputational harm, and loss of professional standing;

110.    Punitive damages pursuant to M.G.L. c. 151B and other applicable statutes, based on

Defendant's willful, malicious, and reckless disregard of Plaintiff's rights;

111.    Injunctive relief, including but not limited to an order requiring Defendant to revise its

employment policies and practices to comply with state law;

112.    Reasonable attorneys' fees and costs pursuant to M.G.L. c. 151B, § 9 and M.G.L. c. 149,

§ 150;

113.    Pre- and post-judgment interest on all amounts awarded, as provided by law; and

114.    Such other and further relief as This Court deems just and proper.

<u>Demand For Jury Trial</u>

Plaintiff demands a trial by jury on all issues and all counts.


PLAINTIFF, PRO SE

Julian Ross
105 East Street
Hadley, MA 01035
Telephone: 413-531-9810
E-mail: jross21@gmail.com

2

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts The Superior Court |
|---|---|---|
| | | COUNTY    Hampshire |

| Plaintiff    Julian Ross | Defendant:    Benchling, Inc. |
|---|---|
| ADDRESS:    105 East Street | ADDRESS:    100 Summer Street |
| Apt. B | 23rd Floor |
| Hadley, MA 01035 | Boston, MA 02110 |
| Plaintiff Attorney:  Pro Se | Defendant Attorney: |
| ADDRESS: | ADDRESS: |
| | |
| BBO: | BBO: |

**TYPE OF ACTION AND TRACK DESIGNATION** (see instructions section on next page)

| CODE NO.    B22 | TYPE OF ACTION (specify)    Employment discrimination/retaliation | TRACK    F | HAS A JURY CLAIM BEEN MADE?   [X] YES    [ ] NO |
|---|---|---|---|

*If "Other" please describe:

Is there a claim under G.L. c. 93A?   [ ] YES   [X] NO          Is there a class action under Mass. R. Civ. P. 23?   [ ] YES   [X] NO

**STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A**

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. (Note to plaintiff: for this form, do not state double or treble damages; indicate single damages only.)

**TORT CLAIMS**

| A. Documented medical expenses to date | |
|---|---|
| 1. Total hospital expenses | TBD |
| 2. Total doctor expenses | TBD |
| 3. Total chiropractic expenses | TBD |
| 4. Total physical therapy expenses | TBD |
| 5. Total other expenses (describe below) | TBD |
| TBD | |
| Subtotal (1-5): | $0.00 |
| B. Documented lost wages and compensation to date | $300,000+ |
| C. Documented property damages to date | $0 |
| D. Reasonably anticipated future medical and hospital expenses | TBD |
| E. Reasonably anticipated lost wages | $500,000 |
| F. Other documented items of damages (describe below) | $250,000 |
| Stock options forfeited, emotional distress, reputational harm, loss of employment opportunities | $1,050,000 $0.00 |
| TOTAL (A-F): | |

G. Briefly describe plaintiff's injury, including the nature and extent of the injury:
Wrongful termination in violation of disability rights and medical leave protections, unlawful surveillance and interception of communications, loss of wages and benefits, lost promotion and career advancement, emotional distress, reputational harm, and loss of privacy.

**CONTRACT CLAIMS**

[ ] This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | | |
| | Total | |

Signature of Attorney/Self-Represented Plaintiff: X _[signature]_          Date: 09/02/25

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

**CERTIFICATION UNDER S.J.C. RULE 1:18(5)**

I hereby certify that I have complied with requirements of Rule 5 of Supreme Judicial Court Rule 1:18: Uniform Rules on Dispute Resolution, requiring that I inform my clients about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney: X                                         Date:

# CIVIL ACTION COVER SHEET INSTRUCTIONS—
## SELECT A CATEGORY THAT BEST DESCRIBES YOUR CASE*

**AC Actions Involving the State/Municipality †***

AA1 Contract Action involving Commonwealth, Municipality, MBTA, etc. (A)
AB1 Tortious Action involving Commonwealth, Municipality, MBTA, etc. (A)
AC1 Real Property Action involving Commonwealth, Municipality, MBTA etc. (A)
AD1 Equity Action involving Commonwealth, Municipality, MBTA, etc. (A)
AE1 Administrative Action involving Commonwealth, Municipality, MBTA,etc. (A)

**CN Contract/Business Cases**

A01 Services, Labor, and Materials (F)
A02 Goods Sold and Delivered (F)
A03 Commercial Paper (F)
A04 Employment Contract (F)
A05 Consumer Revolving Credit - M.R.C.P. 8.1 (F)
A06 Insurance Contract (F)
A08 Sale or Lease of Real Estate (F)
A12 Construction Dispute (A)
A14 Interpleader (F)
BA1 Governance, Conduct, Internal Affairs of Entities (A)
BA3 Liability of Shareholders, Directors, Officers, Partners, etc. (A)
BB1 Shareholder Derivative (A)
BB2 Securities Transactions (A)
BC1 Mergers, Consolidations, Sales of Assets, Issuance of Debt, Equity, etc. (A)
BD1 Intellectual Property (A)
BD2 Proprietary Information or Trade Secrets (A)
BG1 Financial Institutions/Funds (A)
BH1 Violation of Antitrust or Trade Regulation Laws (A)
A99 Other Contract/Business Action - Specify (F)

\* See Superior Court Standing Order 1-88 for an explanation of the tracking deadlines for each track designation: F, A, and X. On this page, the track designation for each case type is noted in parentheses.

† Choose this case type if ANY party is the Commonwealth, a municipality, the MBTA, or any other governmental entity UNLESS your case is a case type listed under Administrative Civil Actions (AA).

‡ Choose this case type if ANY party is an incarcerated party, UNLESS your case is a case type listed under Administrative Civil Actions (AA) or is a Prisoner Habeas Corpus case (E97).

**ER Equitable Remedies**

D01 Specific Performance of a Contract (A)
D02 Reach and Apply (F)
D03 Injunction (F)
D04 Reform/ Cancel Instrument (F)
D05 Equitable Replevin (F)
D06 Contribution or Indemnification (F)
D07 Imposition of a Trust (A)
D08 Minority Shareholder's Suit (A)
D09 Interference in Contractual Relationship (F)
D10 Accounting (A)
D11 Enforcement of Restrictive Covenant (F)
D12 Dissolution of a Partnership (F)
D13 Declaratory Judgment, G.L. c. 231A (A)
D14 Dissolution of a Corporation (F)
D99 Other Equity Action (F)

**PA Civil Actions Involving Incarcerated Party ‡**

PA1 Contract Action involving an Incarcerated Party (A)
PB1 Tortious Action involving an Incarcerated Party (A)
PC1 Real Property Action involving an Incarcerated Party (F)
PD1 Equity Action involving an Incarcerated Party (F)
PE1 Administrative Action involving an Incarcerated Party (F)

**TR Torts**

B03 Motor Vehicle Negligence - Personal Injury/Property Damage (F)
B04 Other Negligence - Personal Injury/Property Damage (F)
B05 Products Liability (A)
B06 Malpractice - Medical (A)
B07 Malpractice - Other (A)
B08 Wrongful Death - Non-medical (A)
B15 Defamation (A)
B19 Asbestos (A)
B20 Personal Injury - Slip & Fall (F)
B21 Environmental (F)
B22 Employment Discrimination (F)
BE1 Fraud, Business Torts, etc. (A)
B99 Other Tortious Action (F)

**RP Summary Process (Real Property)**

S01 Summary Process - Residential (X)
S02 Summary Process - Commercial/ Non-residential (F)

**RP Real Property**

C01 Land Taking (F)
C02 Zoning Appeal, G.L. c. 40A (F)
C03 Dispute Concerning Title (F)
C04 Foreclosure of a Mortgage (X)
C05 Condominium Lien & Charges (X)
C99 Other Real Property Action (F)

**MC Miscellaneous Civil Actions**

E18 Foreign Discovery Proceeding (X)
E97 Prisoner Habeas Corpus (X)
E22 Lottery Assignment, G.L. c. 10, § 28 (F)

**AB Abuse/Harassment Prevention**

E15 Abuse Prevention Petition, G.L. c. 209A (X)
E21 Protection from Harassment, G.L. c. 258E(X)

**AA Administrative Civil Actions**

E02 Appeal from Administrative Agency, G.L. c. 30A (X)
E03 Certiorari Action, G.L. c. 249, § 4 (X)
E05 Confirmation of Arbitration Awards (X)
E06 Mass Antitrust Act, G.L. c. 93, § 9 (A)
E07 Mass Antitrust Act, G.L. c. 93, § 8 (X)
E08 Appointment of a Receiver (X)
E09 Construction Surety Bond, G.L. c. 149, §§ 29, 29A (A)
E10 Summary Process Appeal (X)
E11 Worker's Compensation (X)
E16 Auto Surcharge Appeal (X)
E17 Civil Rights Act, G.L. c.12, § 11H (A)
E24 Appeal from District Court Commitment, G.L. c.123, § 9(b) (X)
E94 Forfeiture, G.L. c. 265, § 56 (X)
E95 Forfeiture, G.L. c. 94C, § 47 (F)
E99 Other Administrative Action (X)
Z01 Medical Malpractice - Tribunal only, G.L. c. 231, § 60B (F)
Z02 Appeal Bond Denial (X)

**SO Sex Offender Review**

E12 SDP Commitment, G.L. c. 123A, § 12 (X)
E14 SDP Petition, G.L. c. 123A, § 9(b) (X)

**RC Restricted Civil Actions**

E19 Sex Offender Registry, G.L. c. 6, § 178M (X)
E27 Minor Seeking Consent, G.L. c.112, § 12S(X)

**TRANSFER YOUR SELECTION TO THE FACE SHEET**

EXAMPLE:

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | F | ☒ YES ☐ NO |

## STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF** — On the face of the Civil Action Cover Sheet (or on attached additional sheets, if necessary), the plaintiff shall state the facts on which the plaintiff relies to determine money damages. A copy of the completed Civil Action Cover Sheet, including the statement concerning damages, shall be served with the complaint. **A clerk-magistrate shall not accept for filing a complaint, except as otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or self-represented litigant.**

**DUTY OF THE DEFENDANT** — If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may file with the defendant's answer a statement specifying the potential damages which may result if the plaintiff prevails.

## A CIVIL ACTION COVER SHEET MUST BE FILED WITH EACH COMPLAINT.
### IF THIS COVER SHEET IS NOT FILLED OUT THOROUGHLY AND ACCURATELY, THE CASE MAY BE DISMISSED.

3

| SUMMONS | DOCKET NO. 2580CV00126 | Massachusetts Trial Court Superior Court |
|---|---|---|

| Julian Ross | Daniel R. Carey | CLERK OF COURTS |
|---|---|---|
| PLAINTIFF(S) | | |
| v. Benchling, Inc. | Hampshire | COUNTY |
| DEFENDANT(S) | | |

THIS SUMMONS IS DIRECTED TO ___Benchling, Inc.___ (Defendant's name).

**You are being sued.** The Plaintiff(s) named above started a lawsuit against you. A copy of the Plaintiff(s)' Complaint filed against you is attached to the Summons, and the original Complaint has been filed in ___Hampshire___ Superior Court.

### YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.

1. **You must respond to this lawsuit in writing within 20 days.**
   If you do not respond, the Court may decide the case against you and award the Plaintiff(s) everything requested in the Complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff(s). If you need more time to respond, you may request an extension of time in writing from the Court.

2. **How to Respond.**
   To respond to this lawsuit, you must file a written response with the Court **and** mail a copy to the Plaintiff(s)' attorney, or the Plaintiff(s) if they are not represented by a lawyer. You can do this by:
   a) Filing your signed original response with the Clerk's Office for Civil Business in ___Hampshire___ Superior Court, by mail, in-person, or electronically through the web portal www.eFileMA.com if the Complaint was e-filed through that portal; or
   b) Delivering or mailing a copy of your response to the Plaintiff(s)' attorney, or the Plaintiff(s) if they are not represented by a lawyer, at the following address: ___Julian Ross___
   ___105 East St. Apt. B___
   ___Hadley, MA 01035___

3.  **What to Include in Your Response.**

    An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the facts alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in Court. If you have any claims against the Plaintiff(s), called counterclaims, that are based on the same facts or events described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff(s) about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Court no more than 10 days after sending your Answer.

    Another way to respond to a Complaint is by filing a "Motion to Dismiss" if you believe that the Complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Massachusetts Rules of Civil Procedure, Rule 12.** If you are filing a Motion to Dismiss, you must follow the filing rules for "Civil Motions in Superior Court," available at:

    **www.mass.gov/law-library/massachusetts-superior-court-rules**

4.  **Legal Assistance.**

    You may wish to get legal help from a lawyer. If you cannot find or afford legal help, some basic information for self-represented litigants is available at: **www.mass.gov/courts/selfhelp**.

5.  **Required Information on All Filings.**

    The "DOCKET NO." appearing at the top of this Summons is the unique case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

    Witness: <u>Hon. Michael D. Ricciuti, Chief Justice</u>, on this date, _____. (Seal)

    Clerk: _____

**Note:** The docket number assigned to the original Complaint by the Clerk should be stated on this Summons before it is served on the Defendant(s).

## PROOF OF SERVICE OF PROCESS

 Suffolk County Sheriff's Department • 132 Portland Street, Boston, MA 02114 • (617) 704-6999

*Suffolk, ss.*

September 23, 2025

I hereby certify and return that on 9/23/2025 at 8:55 AM I served a true and attested copy of the Summons and Complaint in this action in the following manner: To wit, by delivering in hand to Tasha Mann, agent and person in charge at the time of service for Benchling Inc., at CT Corporation System 155 Federal Street Suite 700 Boston, MA 02110 . Administrative Fee ($15.00) Attest/Copies ($5.00) Basic Service Fee (IH) ($30.00) Conveyance ($0.30) Postage and Handling ($1.00) Travel ($25.40) Deputy Expense ($5.00) Total: $81.70

Deputy Sheriff    Gabrielle Drapeau

*Deputy Sheriff*

ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON DEFENDANT.

DATE: _____

RECEIVED

COMMONWEALTH OF MASSACHUSETTS

HAMPSHIRE, ss.                          HAMPSHIRE SUPERIOR COURT
                                        DOCKET NO.: 2580CV00126

|                          |   |
|--------------------------|---|
| JULIAN ROSS,             | ) |
|                          | ) |
|          Plaintiff,      | ) |
| v.                       | ) |
|                          | ) |
| BENCHLING, INC.          | ) |
|                          | ) |
|          Defendant.      | ) |

## NOTICE OF APPEARANCE

To the Clerk:

Please enter my appearance as attorney for the Defendant, Benchling Inc., in the above-entitled action.

Respectfully submitted,

On behalf of the Defendant,

Conrad J. Bletzer, Jr., BBO# 045760
Bletzer & Bletzer, P.C.
300 Market Street
Brighton, MA 02135
617.254.8900
conrad@bletzerlaw.com

Dated: October 9, 2025

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing NOTICE

OF APPEARANCE was electronically filed with the Clerk of the Court and that a copy of the

foregoing instrument was sent by first-class U.S. mail, postage prepaid, on October 9, 2025,

addressed to the following parties:

    Julian Ross

    105 East Street, Apt. B

    Hadley, MA 01035

    jross2l@gmail.com

                                  Conrad J. Bletzer, Jr.

Date Filed 10/9/2025 3:57 PM
Superior Court - Hampshire
Docket Number 2580CV00126

5

**RECEIVED**

## COMMONWEALTH OF MASSACHUSETTS
## HAMPSHIRE COUNTY SUPERIOR COURT

JULIAN ROSS,

               Plaintiff,

v.

BENCHLING, INC.,

               Defendant.

CIVIL ACTION NO.: 2580 CV 00126

## NOTICE OF FILING NOTICE OF REMOVAL

      Defendant Benchling, Inc. ("Benchling") hereby gives notice to this honorable Court, pursuant to 28 U.S.C. § 1446(a), that this action has been removed to the United States District Court for the District of Massachusetts. A copy of the Summons and Complaint is attached hereto as **Exhibit 1**, and a copy of the Notice for Removal is attached hereto as **Exhibit 2**.

      Benchling further certifies that, pursuant to 28 U.S.C. § 1446(d), Plaintiff has been served with this Notice of Filing Notice of Removal in accordance with the Federal Rules of Civil Procedure.

Dated: October 9, 2025

Respectfully submitted,

**BLETZER & BLETZER, P.C.**

Conrad J. Bletzer Jr., BBO No. 045760
300 Market Street
Brighton, MA 02135
617.254.8900
conrad@bletzerlaw.com

Shawn D. Fabian, Ill. Bar No. 6310637
Katherine Oblak, Ill. Bar No. 6307200
**SHEPPARD, MULLIN, RICHTER &
HAMPTON** LLP
321 North Clark St., 32nd Floor
Chicago, Illinois 60654
312.499.6300
sfabian@sheppardmullin.com
koblak@sheppardmullin.com

*Attorneys for Defendant Benchling, Inc.*

Date Filed 10/9/2025 3:57 PM
Superior Court - Hampshire
Docket Number 2580CV00126

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing NOTICE OF FILING NOTICE OF REMOVAL was electronically filed with the Clerk of the Court and that a copy of the foregoing instrument was sent by first-class U.S. mail, postage prepaid, on October 9, 2025, addressed to the following parties:

Julian Ross

105 East Street, Apt. B

Hadley, MA 01035

jross21@gmail.com



-3-

SMRH:4914-8103-7935.2

Date Filed 10/9/2025 3:57 PM
Superior Court - Hampshire
Docket Number 2580CV00126

# Exhibit A

Date Filed 10/9/2025 3:57 PM
Superior Court - Hampshire
Docket Number 2580CV00126

3

| SUMMONS | DOCKET NO. 2580 CV 00126 | Massachusetts Trial Court Superior Court |
|---|---|---|

| Julian Ross PLAINTIFF(S) | Daniel R. Carey | CLERK OF COURTS |
|---|---|---|
| v. Benchling, Inc. DEFENDANT(S) | Hampshire | COUNTY |

THIS SUMMONS IS DIRECTED TO __Benchling, Inc.__ (Defendant's name).

You are being sued. The Plaintiff(s) named above started a lawsuit against you. A copy of the Plaintiff(s)' Complaint filed against you is attached to the Summons, and the original Complaint has been filed in Hampshire _____ Superior Court.

### YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.

1. **You must respond to this lawsuit in writing within 20 days.**
   If you do not respond, the Court may decide the case against you and award the Plaintiff(s) everything requested in the Complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff(s). If you need more time to respond, you may request an extension of time in writing from the Court.

2. **How to Respond.**
   To respond to this lawsuit, you must file a written response with the Court **and** mail a copy to the Plaintiff(s)' attorney, or the Plaintiff(s) if they are not represented by a lawyer. You can do this by:
   a) Filing your signed original response with the Clerk's Office for Civil Business in Hampshire _____ Superior Court, by mail, in-person, or electronically through the web portal www.eFileMA.com if the Complaint was e-filed through that portal; or
   b) Delivering or mailing a copy of your response to the Plaintiff(s)' attorney, or the Plaintiff(s) if they are not represented by a lawyer, at the following address: __Julian Ross 05 East St. Apt B Hadley, MA 01035__

Superior Court—Civil—SC0XX (02/2024)



3. **What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the facts alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in Court. If you have any claims against the Plaintiff(s), called counterclaims, that are based on the same facts or events described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff(s) about anything related to this lawsuit. If you want to have your case heard by a jury, you must specifically request a jury trial in your Court no more than 10 days after sending your Answer.

Another way to respond to a Complaint is by filing a "Motion to Dismiss," if you believe that the Complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under Massachusetts Rules of Civil Procedure, Rule 12. If you are filing a Motion to Dismiss, you must follow the filing rules for "Civil Motions in Superior Court," available at: www.mass.gov/law-library/massachusetts-superior-court-rules

4. **Legal Assistance.**

You may wish to get legal help from a lawyer. If you cannot find or afford legal help, some basic information for self-represented litigants is available at: www.mass.gov/courts/selfhelp.

5. **Required Information on All Filings.**

The "DOCKET NO." appearing at the top of this Summons is the unique case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness: Hon. Michael D. Ricciuti, Chief Justice, on this date, _____ (Seal)

Clerk: _____

Note: The docket number assigned to the original Complaint by the Clerk should be stated on this Summons before it is served on the Defendant(s).

Superior Court—Civil—SC0XX (02/2024)

Date Filed 10/9/2025 3:57 PM
Superior Court - Hampshire
Docket Number 2580CV00126

## PROOF OF SERVICE OF PROCESS



Suffolk County Sheriff's Department • 132 Portland Street, Boston, MA 02114 • (617) 704-6999

*Suffolk, ss.*

September 23, 2025

I hereby certify and return that on 9/23/2025 at 8:55 AM I served a true and attested copy of the Summons and Complaint in this action in the following manner: To wit, by delivering in hand to Tasha Mann, agent and person in charge at the time of service for Benchling Inc., at CT Corporation System 155 Federal Street Suite 700 Boston, MA 02110 . Administrative Fee ($15.00) Attest/Copies ($5.00) Basic Service Fee (IH) ($30.00) Conveyance ($0.30) Postage and Handling ($1.00) Travel ($25.40) Deputy Expense ($5.00) Total: $81.70

Deputy Sheriff    Gabrielle Drapeau

_____
                                    Deputy Sheriff

DATE: _____

Superior Court—Civil—SC0XX (02/2024)

Date Filed 10/9/2025 3:57 PM
Superior Court - Hampshire
Docket Number 2580CV00126
Date Filed 8/2/2025 3:01 AM
Superior Court - Hampshire
Docket Number

1

**RECEIVED**

COMMONWEALTH OF MASSACHUSETTS
HAMPHIRE COUNTY SUPERIOR COURT

CIVIL ACTION NO. _____

JULIAN ROSS, )
            Plaintiff )
)
v. )
)
BENCHLING, INC. )
            Defendant )

COMPLAINT AND DEMAND
FOR JURY TRIAL

1.    Plaintiff Julian Ross brings this action against Defendant Benchling, Inc. for disability

discrimination, failure to accommodate, retaliation, interference with protected leave, and

unlawful surveillance and interception of communications in violation of state law. Specifically,

Defendant violated: (1) M.G.L. c. 151B, § 4(16) by discriminating against Plaintiff on the basis

of disability and failing to provide reasonable accommodations; (2) M.G.L. c. 151B, § 4(4) by

retaliating against Plaintiff for engaging in protected activity, including requesting

accommodations and medical leave; (3) Massachusetts Paid Family and Medical Leave Act

(PFMLA), M.G.L. c. 175M, § 9(d) by terminating Plaintiff in close temporal proximity to his

request for protected intermittent medical leave; (4) Massachusetts common law by wrongfully

terminating Plaintiff in violation of the public policy protecting employees' rights to medical

leave and reasonable accommodation; (5) Massachusetts common law by making and then

repudiating material promises of career advancement upon which Plaintiff reasonably relied to

his detriment; (6) M.G.L. c. 272, § 99 by unlawfully intercepting and recording Plaintiff's

telephone communications without the knowledge or consent of all parties; (7) M.G.L. c. 214, §

1B by unreasonably and substantially interfering with Plaintiff's privacy through undisclosed

Page 1 of 19



Date Filed 10/9/2025 3:57 PM
Superior Court - Hampshire
Docket Number 2580CV00126
Date Filed 9/2/2025 3:01 AM
Superior Court - Hampshire
Docket Number

monitoring and storage of his communications; and (8) Massachusetts common law by engaging in extreme and outrageous conduct that intentionally or recklessly caused Plaintiff severe emotional distress.

<u>Jurisdiction</u>

2.     This Court has jurisdiction over this matter pursuant to M.G.L. c. 212, § 4, which provides the Superior Court with original jurisdiction over civil actions in which the amount in controversy exceeds $25,000. Venue is proper in this Court because Plaintiff resides in Hampshire County, Massachusetts, and Defendant conducts business and employed Plaintiff in Massachusetts, where many of the acts and omissions giving rise to this action occurred.

<u>Parties</u>

3.     Plaintiff Julian Ross resides in Hampshire County, Massachusetts. At all relevant times, Plaintiff was employed by Defendant and performed work within, and for the benefit of, the Commonwealth of Massachusetts.

4.     Defendant Benchling, Inc. is a corporation organized under the laws of the state of Delaware, with its principal place of business at 680 Folsom Street, 8th Floor, San Francisco, CA 94107, and employs over 100 employees. Defendant is registered to do business in Massachusetts and employs more than 100 individuals, qualifying as an "employer" in all statutes related to this action, including the PFMLA, and M.G.L. c. 151B.

<u>Factual Allegations</u>

5.     Plaintiff Julian Ross began employment with Defendant on or about June 21, 2021, in the full-time position of Sales Development Representative ("SDR") at Defendant Benchling, Inc.'s Massachusetts location at 100 Summer Street, 23rd Floor, Boston, Massachusetts 02110, serving enterprise clients across various US and global territories.

Page 2 of 19



Date Filed 10/9/2025 3:57 PM
Superior Court - Hampshire
Docket Number 2580CV00126
Date Filed 9/2/2025 3:01 AM
Superior Court - Hampshire
Docket Number

6.    Defendant Benchling is a cloud-based software platform for biotechnology research and development that provides software tools for the research and development of cutting edge therapeutics and pharmaceuticals. Its clients include multinational pharmaceutical companies and world-class academic institutions.

7.    Plaintiff was classified as a non-exempt employee, with an hourly base wage of $31.25 and was also eligible to earn commissions and bonuses related to meeting certain performance metrics. The target annual incentive compensation was set at $30,000.00, with no cap on earnings. Additionally, he was granted incentive stock options (ISOs) as part of his employment contract, alongside a benefits package, as part of his employment agreement.

8.    In or around March 2021, Benchling's SDR manager Christian Haas-Kwon personally recruited Plaintiff via LinkedIn.

9.    Mr. Haas-Kwon represented to Plaintiff that Benchling was "doubling this year," that there was "lots of room to grow vertically or laterally," and that employment with Benchling offered "awesome perks and benefits," including unlimited PTO, wellness stipends, and advancement opportunities.

10.    Beyond these specific assurances, Mr. Haas-Kwon emphasized Benchling's status as a rapidly scaling, venture-capital-backed pre-IPO company, portraying the position as a rare opportunity. He represented that joining Benchling would justify Plaintiff's leaving secure employment and would position him on a long-term trajectory of advancement and exceptional internal mobility.

11.    Plaintiff reasonably relied on these representations in agreeing to enter the interview process, advancing through multiple interview rounds, and ultimately accepting employment with Benchling, rather than pursuing other external opportunities available at that time.

Page 3 of 19

Date Filed 10/9/2025 3:57 PM
Superior Court - Hampshire
Docket Number 2580CV00126
    Date Filed 9/2/2025 3:01 AM
    Superior Court - Hampshire
    Docket Number

12.    In January, 2022, Plaintiff notified Defendant of his need to take a medical leave of
absence due to disabling health conditions including, but not limited to, depression, anxiety, and
severe insomnia. Plaintiff was fully eligible for leave under PFMLA. Defendant approved the
leave request, and Plaintiff applied for and was granted paid leave benefits under PFMLA by the
Massachusetts Department of Family and Medical Leave (DFML). In connection with his
application, Plaintiff provided Defendant with a "Certification of Your Serious Health
Condition" form dated February 6, 2022, completed by his health care provider. This form
certified Plaintiff's need for continuous medical leave beginning January 24, 2022, and ending
April 18, 2022.

13.    Upon returning from medical leave on April 18, 2022, Plaintiff was informed that he
would be assigned new sales accounts effective May 1, 2022, the start of the second fiscal
quarter.

14.    Between April 18 and May 1, Defendant barred Plaintiff from resuming core duties,
working active accounts or earning commissions. Although Plaintiff had been medically cleared
and was fully prepared with a planned return date of April 18, Defendant instructed him to wait
until May 1 to regain access to commission-earning responsibilities and resume normal work
functions.

15.    Shortly after returning to work, Plaintiff informed Defendant that his healthcare provider
had advised he may require intermittent medical leave in the future but that no specific dates had
been identified. Plaintiff made clear that he would notify Defendant promptly should the need
arise.

16.    On or about May 11, 2022, Plaintiff formally notified Defendant that his physician had
prescribed intermittent leave on an as-needed basis. Plaintiff also provided a written

Page 4 of 19

Date Filed 10/9/2025 3:57 PM
Superior Court - Hampshire
Docket Number 2580CV00126
Date Filed 9/2/2025 3:01 AM
Superior Court - Hampshire
Docket Number

accommodation request from his healthcare provider recommending continued remote work

flexibility to manage his medical conditions. Plaintiff was eligible for such leave under the

PFMLA.

17.    Defendant approved the remote work accommodation. This occurred during a period in

which Defendant was transitioning employees from remote to in-office work. Plaintiff's

work-from-home status, although medically justified, distinguished him from many of his peers.

18.    In or around July 2022, Defendant held a cross-office Sales Development Representative

("SDR") meeting over Zoom, led by Director of Sales Development Sean Simerly, with SDRs

from Boston, San Francisco, and Zurich. The purpose of the meeting was to address widespread

employee dissatisfaction with Defendant's return-to-office ("RTO") policies. Unlike most other

teams at Benchling, which were subject to a flexible and scarcely enforced three-day in-office

expectation, SDRs were uniquely, and for unexplained reasons, required to be physically present

in the office at least four days per week, ideally five, according to Mr. Simerly. During the

meeting, nearly all of the SDRs expressed frustration with the policy and complained that it was

unfair and burdensome compared to the treatment of other departments. Although Plaintiff had

already been granted a medical accommodation permitting him to work remotely on a full-time

basis, he attended the meeting in solidarity with his colleagues, advocating for broader

work-from-home ("WFH") policies consistent with the expectations applied to other teams

across the company. Plaintiff reasonably believed that his participation was protected activity in

support of workplace fairness. Upon information and belief, Mr. Simerly, who was under

pressure to demonstrate strict RTO enforcement to senior executives, including CEO Sajith

Wickramasekara, viewed Plaintiff's solidarity and public alignment with the dissenting

employees as a challenge to his authority and a source of personal frustration. Another SDR,



Date Filed 10/9/2025 3:57 PM
Superior Court - Hampshire
Docket Number 2580CV00126
Date Filed 9/2/2025 3:01 AM
Superior Court - Hampshire
Docket Number

Max Eddy, who also had a remote-work medical accommodation but chose not to attend the meeting, was neither terminated nor disciplined and remains employed by Defendant. Plaintiff reasonably believes that his participation in the July 2022 meeting contributed to Defendant's retaliatory animus and ultimately factored into the decision to terminate his employment.

19.    Following his return from medical leave, Plaintiff observed that he was no longer being afforded equal opportunities for success relative to other members of the Sales Development Representative (SDR) team. Unlike his peers, Plaintiff was excluded from attending in-person industry conferences—events which routinely generated high-value leads. Moreover, he was excluded from team-building and leadership opportunities, including interviewing candidates and planning team events, which were instead given to more junior, less experienced members of his team.

20.    Plaintiff was also subjected to disruptive account changes during the middle of an active fiscal quarter, with several key accounts reassigned to other SDRs without explanation, undermining Plaintiff's sales momentum and opportunity pipeline.

21.    Despite these impediments, Plaintiff's performance during the second fiscal quarter (May through July 2022) was exceptional. He achieved 100% of his individual and team sales targets and was responsible for generating the majority of the revenue bookings attributed to the Enterprise segment of the SDR team.

22.    In August 2022, just weeks before Plaintiff's termination, Plaintiff's direct manager, Christian Haas-Kwon, encouraged him to begin preparing for a promotion expected to occur in or around December 2022, near Plaintiff's 18-month mark. Mr. Haas-Kwon emphasized Plaintiff's strong performance and advised him to explore any number of internal roles of interest, including those in sales or marketing. He provided Plaintiff with specific direction on

Page 6 of 19



Date Filed 10/9/2025 3:57 PM
Superior Court - Hampshire
Docket Number 2580CV00126
Date Filed 9/2/2025 3:01 AM
Superior Court - Hampshire
Docket Number

the promotion process and encouraged outreach to other teams—a directive Plaintiff acted upon by contacting colleagues and expressing interest in future openings.

23.     On or about September 7, 2022, Plaintiff met with Emily Kirsch, Defendant's HR Generalist, and informed her that he would require another period of intermittent medical leave in the coming weeks. Ms. Kirsch acknowledged this request and guaranteed support, reiterating Defendant's accommodations and full commitment to supporting Plaintiff during his leave. She advised Plaintiff to share the details with his manager, Mr. Haas-Kwon, during their next routine meeting on September 15.

24.     On September 15, 2022, only eight days later, Plaintiff attended what he was led to believe would be his routine weekly "one-on-one" meeting with Mr. Haas-Kwon, where he planned to disclose and discuss the medical leave, according to Ms. Kirsch's direction. He was surprised to find Maggie Lee, an HR representative, also in attendance. Within minutes and without prior notice, Plaintiff was summarily terminated from his employment. When Plaintiff asked for the reason, Mr. Haas-Kwon vaguely cited "performance" and then immediately exited the meeting. Ms. Lee then admitted she was unaware of any specific performance issues and stated unequivocally that she would follow up with more information. No such follow-up ever occurred.

25.     Defendant never engaged in the legally required interactive process with Plaintiff regarding his September 7 accommodation and intermittent leave request, nor did it provide any reasonable accommodation prior to his termination. Instead, Defendant terminated Plaintiff just days after he invoked his rights under the PFMLA.

26.     Upon information and belief, none of the other seven Boston-based SDRs were terminated around that time, and at least one or more of them had not met their individual or

Date Filed 10/9/2025 3:57 PM
Superior Court - Hampshire
Docket Number 2580CV00126
Date Filed 9/2/2025 3:01 AM
Superior Court - Hampshire
Docket Number



team targets for the second fiscal quarter, as well as other prior fiscal quarters. Plaintiff also

understands that none of the other team members generated sales pipeline revenue performance

comparable to his own.

27.     Plaintiff was the most senior Boston SDR at the time of his termination, with

substantially more experience and responsibilities than his peers. At all times prior to and

through his termination, Plaintiff was qualified for his position, performed his duties

satisfactorily, and was never formally disciplined.

28.     At no point did Plaintiff's disability pose any risk of harm to himself or others in the

workplace, and he remained fully capable of performing the essential functions and tasks of his

role, with or without reasonable accommodation.

29.     Defendant regarded Plaintiff as having a disability, and Plaintiff had a documented

history of serious and persistent health conditions that qualified as a protected disability under

state law.

30.     In the months leading up to his termination, and throughout the second and third fiscal

quarters, many, or possibly all, of Plaintiff's sales calls were secretly recorded and stored by

Defendant using its default SalesLoft telephone-dialing configuration. These secret audio

recordings, obtained without Plaintiff's knowledge, consent or control, which Defendant used for

internal performance monitoring and training, along with emails, presentations, and other

materials, capture Plaintiff's competence, professionalism, and positive rapport with clients and

colleagues, and are expected to serve as compelling evidence of his performance and character

during discovery.

31.     Plaintiff only recently discovered that Defendant's recording practices constituted

unlawful interceptions under state law. Plaintiff had no reasonable opportunity to discover the

Page 8 of 19

Date Filed 10/9/2025 3:57 PM
Superior Court - Hampshire
Docket Number 2580CV00128
Date Filed 9/23/2025 3:01 PM
Superior Court - Hampshire
Docket Number



illegality earlier because Defendant concealed the nature of its recording practices, failed to provide any notice or training, and never obtained Plaintiff's informed consent. Plaintiff reasonably relied on Defendant's representations and omissions regarding its call monitoring and recording practices and did not investigate their legality until recently, when he pieced together that these practices violated state law.

32.    Defendant's undisclosed recording practices violated state law, including M.G.L. c.272 § 99 and M.G.L. c. 214 § 1B.

33.    As a result of the above-described violations of state law, Defendant is liable to Plaintiff for back pay, front pay, unpaid wages and commissions, compensatory and punitive damages, emotional distress damages, and all other remedies available under law.

34.    Plaintiff has complied with all administrative and procedural prerequisites to filing this action, including those set forth in M.G.L. c. 151B, §5.

<u>Count I - Disability Discrimination (M.G.L. c. 151B, § 4(16))</u>

35.    Plaintiff repeats and incorporates by reference all preceding allegations as if fully set forth herein.

36.    At all relevant times, Plaintiff was a qualified disabled person within the meaning of M.G.L. c. 151B, § 1(16) and was capable of performing the essential functions of his position with or without reasonable accommodation.

37.    Defendant Benchling, Inc. is an employer as defined by M.G.L. c. 151B, § 1(5) and is subject to the requirements of Chapter 151B.

38.    Defendant was aware of Plaintiff's disability and medical conditions and received timely, documented requests for reasonable accommodations, including medical leave and remote work flexibility.

Date Filed 10/9/2025 3:57 PM
Superior Court - Hampshire
Docket Number 2580CV00126
Superior Court - Hampshire
Docket Number



39.    Defendant failed to engage in the required interactive dialogue with Plaintiff and failed to reasonably accommodate his known disability, in violation of its statutory duties.

40.    Defendant ultimately terminated Plaintiff in whole or in part because of his disability and/or because he sought accommodation for it.

41.    As a direct and foreseeable result of Defendant's unlawful discrimination, Plaintiff has suffered loss of income, loss of employment benefits, emotional distress, and other compensable injuries.

42.    Defendant's conduct was willful, knowing, and/or undertaken with reckless disregard of Plaintiff's rights under Massachusetts law, entitling Plaintiff to compensatory and punitive damages, as well as reasonable attorneys' fees and costs under M.G.L. c. 151B, § 9.

<u>Count II - Retaliation (M.G.L. c. 151B, § 4(4))</u>

43.    Plaintiff repeats and incorporates by reference all preceding allegations as if fully set forth herein.

44.    Plaintiff engaged in protected conduct under M.G.L. c. 151B, including but not limited to: (a) requesting reasonable accommodations for his disabling conditions; (b) requesting and exercising medical leave; and (c) participating in a July 2022 SDR team meeting in solidarity with colleagues to oppose Defendant's disparate return-to-office policy, which imposed stricter requirements on SDRs than on other departments. Plaintiff reasonably believed the policy was discriminatory, unfair, and inconsistent with the rights of employees to be free from disability-based discrimination and retaliation under Massachusetts law.

45.    Shortly after requesting additional intermittent leave and reaffirming his accommodation needs, Plaintiff was terminated without warning or substantiated performance rationale.



Date Filed 10/9/2025 3:57 PM
Superior Court - Hampshire
Docket Number 2580CV00126
Date Filed 9/22/2025 9:01 AM
Superior Court - Hampshire
Docket Number

46.    Defendant's termination of Plaintiff was retaliatory in nature and in violation of M.G.L. c. 151B, § 4(4), which prohibits employers from retaliating against any individual for asserting their rights under the statute.

47.    As a result of Defendant's unlawful retaliation, Plaintiff has sustained significant financial and emotional damages, including lost wages, lost benefits, reputational harm, and emotional distress.

48.    Defendant's retaliatory actions were taken with malice or reckless disregard for Plaintiff's rights, entitling him to compensatory and punitive damages, as well as attorneys' fees and costs under M.G.L. c. 151B, § 9.

### Count III - Retaliation Under PFMLA (M.G.L. c. 175M, § 9(d))

49.    Plaintiff repeats and incorporates by reference all preceding allegations as if fully set forth herein.

50.    At all relevant times, Plaintiff was a covered employee entitled to leave under the Massachusetts Paid Family and Medical Leave Act (PFMLA), M.G.L. c. 175M, and Defendant was a covered employer.

51.    In January 2022, Plaintiff applied for and was granted paid medical leave benefits through the Massachusetts Department of Family and Medical Leave (DFML). Defendant approved his leave and was aware of the underlying qualifying health condition.

52.    In addition to exercising his own PFMLA rights, Plaintiff also engaged in protected activity by joining a July 2022 SDR team meeting in solidarity with colleagues to oppose Defendant's stricter return-to-office policy, which Plaintiff reasonably believed was unfair, discriminatory, and inconsistent with the equal rights of employees under Massachusetts law, including those requiring medical leave or accommodations.

Page 11 of 19



Date Filed 10/9/2025 3:57 PM
Superior Court - Hampshire
Docket Number
Date Filed 10/9/2025 9:01 AM
Superior Court - Hampshire
Docket Number

53.     On or about September 7, 2022, Plaintiff notified Defendant's HR personnel of his intent to take an additional period of intermittent PFMLA leave in the coming weeks, consistent with medical guidance.

54.     Just eight days later, on September 15, 2022, Defendant abruptly terminated Plaintiff's employment without prior warning or substantiated performance documentation.

55.     Plaintiff's termination occurred in close temporal proximity to his protected request for PFMLA leave and after his prior exercise of PFMLA rights earlier in the year.

56.     Defendant's conduct constitutes retaliation in violation of M.G.L. c. 175M, § 9(d), which prohibits employers from taking any adverse action against an employee for exercising rights under the Act or applying for leave benefits.

57.     As a result of Defendant's unlawful retaliation, Plaintiff has suffered lost wages, lost benefits, emotional distress, reputational harm, and other compensable injuries.

58.     Pursuant to M.G.L. c. 175M, § 9(d) and M.G.L. c. 149, § 150, Plaintiff is entitled to treble damages, reasonable attorneys' fees and costs, pre- and post-judgment interest, and any other relief This Court deems just and proper.

<u>Count IV - Wrongful Termination in Violation of Public Policy</u>

59.     Plaintiff repeats and incorporates by reference all preceding allegations as if fully set forth herein.

60.     Massachusetts recognizes a narrow exception to the at-will employment doctrine where an employee is terminated for reasons that violate a clearly established public policy.

61.     It is the public policy of the Commonwealth of Massachusetts to protect the rights of employees to take protected medical leave, to seek reasonable accommodations for disabling health conditions, and to be free from retaliation for exercising rights guaranteed under state law.

Page 12 of 19

Date Filed 10/9/2025 3:57 PM
Superior Court - Hampshire
Docket Number 2580CV00126
Superior Court - Hampshire
Docket Number

62.    Plaintiff was terminated by Defendant on September 15, 2022, just days after notifying

Defendant of his intent to take further protected medical leave under the PFMLA and M.G.L. c.

151B.

63.    Plaintiff's termination was motivated, in whole or in part, by his refusal to forgo these

rights and by his attempt to exercise legally protected medical leave and accommodation rights,

conduct which is explicitly protected under Massachusetts public policy.

64.    Defendant's conduct constitutes wrongful discharge in violation of public policy.

65.    As a direct and proximate result of Defendant's unlawful termination, Plaintiff has

suffered damages including lost wages, lost benefits, emotional distress, and reputational harm.

66.    Plaintiff is entitled to compensatory damages and all other relief This Court deems just

and proper, including punitive damages where appropriate.

67.    This claim is premised on independent public policies embodied in M.G.L. c. 175M

(PFMLA) and the Commonwealth's privacy and wiretapping protections (M.G.L. c. 214, § 1B;

M.G.L. c. 272, § 99), separate and apart from M.G.L. c. 151B. It is pleaded in the alternative to

preserve Plaintiff's rights in the event statutory remedies are determined not to provide complete

relief.

Count V - Promissory Estoppel

68.    Plaintiff repeats and incorporates by reference all preceding allegations as if fully set

forth herein.

69.    Defendant, through its authorized agents including Christian Haas-Kwon during

Plaintiff's recruitment in 2021 and during his tenure throughout 2022, made clear and repeated

promises and assurances that Plaintiff's employment with Benchling would offer significant

growth opportunities, including vertical or lateral advancement.



Date Filed 10/9/2025 3:57 PM
Superior Court - Hampshire
Docket Number 2582CV00126
    Date Filed 9/2/2025 9:01 AM
    Superior Court - Hampshire
    Docket Number

70.    During recruitment in 2021, Defendant's manager, Christian Haas-Kwon, represented that Benchling was "doubling this year," that there was "lots of room to grow vertically or laterally," and that employment offered career mobility, benefits, and advancement opportunities. Plaintiff reasonably relied on these representations in pursuing and accepting employment with Benchling rather than other available opportunities.

71.    In or around August 2022, Plaintiff's direct supervisor, Christian Haas-Kwon, acting on behalf of Defendant, advised Plaintiff to begin preparing for a promotion expected to occur in or around December 2022, at Plaintiff's 18-month employment mark.

72.    Mr. Haas-Kwon explicitly acknowledged Plaintiff's outstanding performance during the second fiscal quarter, advised him of the internal mobility process, and directed him to begin identifying and exploring roles of interest, including positions in sales or marketing.

73.    Relying on this directive, Plaintiff undertook concrete steps toward internal advancement, including messaging team members, engaging in exploratory conversations, and initiating early preparations for internal applications.

74.    At no time did Defendant or Mr. Haas-Kwon indicate that Plaintiff was at risk of disciplinary action, demotion, or termination. On the contrary, Plaintiff was led to believe that he was on track for advancement based on performance and tenure.

75.    Plaintiff reasonably and foreseeably relied on these representations to his detriment, by investing time and energy into pursuing roles within Defendant's organization and refraining from seeking external employment opportunities.

76.    Defendant's subsequent termination of Plaintiff, without any notice, explanation, or performance documentation, constituted a breach of the reasonable expectations created by Defendant's own agent, and rendered Plaintiff's reliance harmful and damaging.

Page 14 of 19

Date Filed 10/9/2025 3:57 PM
Superior Court - Hampshire
Docket Number 2580CV00126
      Date Filed 10/9/2025 3:01 AM
      Superior Court - Hampshire
      Docket Number

77.    As a direct and proximate result of this detrimental reliance, Plaintiff has suffered

financial losses, reputational harm, emotional distress, and lost opportunity for advancement,

including the loss of expected promotion to an Account Executive or similar role with

substantially increased on-target earnings ('OTE') of $180,000+, and additional equity grants.

78.    Plaintiff is entitled to compensatory damages and such other relief as the Court may deem

just and proper.

<u>Count VI – Unlawful Interception of Communications (M.G.L. c. 272, § 99)</u>

79.    Plaintiff repeats and incorporates by reference all preceding allegations as if fully set

forth herein.

80.    Massachusetts law requires the consent of all parties to the interception or recording of

wire and oral communications. M.G.L. c. 272, § 99.

81.    Defendant Benchling, Inc. intentionally intercepted, caused to be intercepted, or secretly

recorded Plaintiff's telephone communications, including business development and client calls

placed through SalesLoft, by means of a device, without the consent of all parties to those

communications.

82.    Defendant failed to disclose its default call-recording practices to Plaintiff or the call

recipients, failed to obtain written or verbal consent, and affirmatively concealed the existence

and scope of such practices.

83.    Plaintiff reasonably relied on Defendant's omissions and was unaware that his

communications were being secretly recorded and stored. He only recently discovered that

Defendant's conduct constituted unlawful interception under Massachusetts law.

84.    Defendant's unlawful conduct deprived Plaintiff of his statutory rights and constituted a

substantial invasion of privacy.

Page 15 of 19

Date Filed 10/9/2025 3:57 PM
Superior Court - Hampshire
Docket Number 2580CV00126
Superior Court - Hampshire
Docket Number

85.     Pursuant to M.G.L. c. 272, § 99(Q), Plaintiff is entitled to actual damages, punitive damages, attorney's fees, and costs.

### Count VII – Invasion of Privacy (M.G.L. c.214, § 1B)

86.     Plaintiff repeats and incorporates by reference all preceding allegations as if fully set forth herein.

87.     Massachusetts law protects individuals from unreasonable, substantial, or serious interference with their privacy. M.G.L. c.214, § 1B.

88.     Defendant knowingly and intentionally engaged in undisclosed monitoring and storage of Plaintiff's communications, including telephone call recordings, metadata, and related electronic information, without his knowledge or consent.

89.     Defendant used and disclosed these stored communications internally for performance monitoring, training, and other purposes beyond the scope of any authorized access.

90.     These undisclosed practices constituted an unreasonable and serious interference with Plaintiff's privacy rights under Massachusetts law.

91.     Plaintiff did not become aware of the unlawful nature of these practices until recently, as Defendant affirmatively concealed its recording and storage activities and never provided notice or sought consent.

92.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages including emotional distress, reputational harm, and loss of dignity, and is entitled to compensatory damages, punitive damages, attorney's fees, and costs.

### Count VIII – Intentional Infliction of Emotional Distress (Common Law)

93.     Plaintiff repeats and incorporates by reference all preceding allegations as if fully set forth herein.

Page 16 of 19

Date Filed 10/9/2025 3:57 PM
Superior Court - Hampshire
Docket Number 2580CV00426
Superior Court - Hampshire
Docket Number



94.    At all relevant times, Defendant was aware that Plaintiff suffered from serious medical conditions, including depression, anxiety, and insomnia, and that Plaintiff had taken protected leave to manage these conditions.

95.    Despite this knowledge, Defendant engaged in a pattern of conduct designed to undermine, isolate, and eventually terminate Plaintiff, including: withholding commissionable work upon his return from leave; excluding him from conferences and internal advancement opportunities; reassigning accounts without explanation; misrepresenting his promotion prospects; and terminating him abruptly just eight days after he informed HR of his need for additional medical leave.

96.    Plaintiff was terminated without notice, without prior discipline, and without a documented performance rationale, despite being medically cleared and having achieved 100% of quota and major pipeline contribution in the quarter preceding his termination.

97.    This conduct, particularly the timing of Plaintiff's termination in close proximity to a protected leave request, was intentional, outrageous, and committed with reckless disregard for Plaintiff's emotional well-being and legal rights.

98.    In addition, Defendant's undisclosed interception, recording, and storage of Plaintiff's communications, separate and apart from the termination decision, was extreme and outrageous and independently caused severe emotional distress.

99.    As a direct and foreseeable result of Defendant's conduct, Plaintiff suffered severe emotional distress, including worsening depression, anxiety, sleep disruption, diminished self-worth, and mental health deterioration requiring ongoing treatment and counseling.

100.    Defendant is liable for general and special damages arising from this conduct, including compensatory damages for pain and suffering, emotional distress, and mental anguish.

Date Filed 10/9/2025 3:57 PM
Superior Court - Hampshire
Docket Number
Date Filed 10/9/2025 3:01 AM
Superior Court - Hampshire
Docket Number



## Reservation of Federal Rights

101.    Plaintiff repeats and incorporates by reference all preceding allegations as if fully set forth herein.

102.    Plaintiff expressly reserves all rights and causes of action arising under federal law, including but not limited to: the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.; the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq.; the Federal Wiretap Act, 18 U.S.C. §§ 2511-2520; and the Stored Communications Act, 18 U.S.C. §§ 2701-2707.

103.    Plaintiff does not assert such federal claims in this Complaint in order to maintain jurisdiction in this Court, but expressly preserves them for filing in an appropriate forum. Nothing in this pleading shall be construed as a waiver, abandonment, or forfeiture of Plaintiff's rights under federal law, including claims arising from Defendant's unlawful surveillance, interception, recording, and storage of Plaintiff's communications.

## Prayer for Relief

104.    WHEREFORE, Plaintiff Julian Ross respectfully requests that This Court enter judgment in his favor and against Defendant Benchling, Inc., and grant the following relief:

105.    Back pay in the form of lost wages, commissions, bonuses, stock options, and other compensation and benefits to which Plaintiff would have been entitled but for Defendant's unlawful conduct;

106.    Front pay in lieu of reinstatement, including future lost wages and diminished earning capacity;

107.    Liquidated damages pursuant in an amount equal to the sum of lost wages, interest, and other compensation;



Date Filed 10/9/2025 3:57 PM
Superior Court - Hampshire
Docket Number 2580CV00126
Date Filed 9/2/2025 3:01 AM
Superior Court - Hampshire
Docket Number

108.    Treble damages pursuant to M.G.L. c. 149, § 150 and the PFMLA, M.G.L. c. 175M,

§ 9(d);

109.    Compensatory damages pursuant to the PFMLA (M.G.L. c. 175M, § 9(d)), M.G.L. c.

151B, and Massachusetts common law, including damages for emotional distress, mental

anguish, reputational harm, and loss of professional standing;

110.    Punitive damages pursuant to M.G.L. c. 151B and other applicable statutes, based on

Defendant's willful, malicious, and reckless disregard of Plaintiff's rights;

111.    Injunctive relief, including but not limited to an order requiring Defendant to revise its

employment policies and practices to comply with state law;

112.    Reasonable attorneys' fees and costs pursuant to M.G.L. c. 151B, § 9 and M.G.L. c. 149,

§ 150;

113.    Pre- and post-judgment interest on all amounts awarded, as provided by law; and

114.    Such other and further relief as This Court deems just and proper.

<u>Demand For Jury Trial</u>.

Plaintiff demands a trial by jury on all issues and all counts.


PLAINTIFF, PRO SE

Julian Ross
105 East Street
Hadley, MA  01035
Telephone: 413-531-9810
E-mail: jross21@gmail.com


Page 19 of 19

Date Filed 10/9/2025 3:57 PM
Superior Court - Hampshire
Docket Number 2580CV00126

# Exhibit B

Date Filed 10/9/2025 3:57 PM
Superior Court - Hampshire
Docket Number 2580CV00126

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

JULIAN ROSS,

              Plaintiff,

v.

BENCHLING, INC.,

              Defendant.

CIVIL ACTION NO.: _____

[*Hampshire County Superior Court Case No. 2580 CV 00126*]

## NOTICE OF REMOVAL

In accordance with 28 U.S.C. §§ 1332, 1441, and 1446, Defendant Benchling, Inc. ("Benchling"), by and through its undersigned counsel, hereby respectfully files this Notice of Removal of *Julian Ross v. Benchling, Inc.*, pending in the Commonwealth of Massachusetts, Hampshire County Superior Court, Case No. 2580 CV 00126. In support of this Notice, Defendant states as follows:

### THE STATE COURT ACTION

1.      On September 2, 2025, Plaintiff Julian Ross ("Plaintiff") initiated the above-captioned matter by filing a Complaint in the Commonwealth of Massachusetts, Hampshire County Superior Court, captioned *Julian Ross v. Benchling, Inc.* (the "State Court Action"). A copy of the State Court Action Complaint (the "Complaint") is attached hereto as **Exhibit 1**, and a copy of the State Court Action Civil Cover Sheet is attached hereto as **Exhibit 2**.

2.      Plaintiff served Benchling with the Summons and Complaint on September 23, 2025. *See* Summons and Proof of Service of Process, attached hereto as **Exhibit 3**.

3.      In the Complaint, Plaintiff alleges the following causes of action: (1) disability discrimination in violation of Mass. Gen. Laws ch. 151B, § 4(16); (2) retaliation in violation of Mass. Gen. Laws ch. 151B, § 4(4); (3) retaliation in violation of Mass. Gen. Laws ch. 175M, §

SMRH:4914-8169-3295.4

-1-



Date Filed 10/9/2025 3:57 PM
Superior Court - Hampshire
Docket Number 2580CV00126

9(d); (4) wrongful termination in violation of public policy; (5) promissory estoppel; (6) unlawful interception of communications in violation of Mass. Gen. Laws ch. 272, § 99; (7) invasion of privacy in violation of Mass. Gen. Laws ch. 214, § 1B; and (8) intentional infliction of emotional distress. (Ex. 1, ¶¶ 36–42, 44–48, 50–58, 60–67, 69–78, 80–85, 87–92, 94–100).

4.      Plaintiff seeks monetary damages including but not limited to: "[b]ack pay in the form of lost wages, commissions, bonuses, stock options, and other compensation and benefits"; "[f]ront pay in lieu of reinstatement, including future lost wages and diminished earning capacity"; "[l]iquidated damages [] in an amount equal to the sum of lost wages, interest, and other compensation"; treble damages; compensatory damages; and punitive damages. (*Id.*, ¶¶ 105–110). Plaintiff also seeks injunctive relief and attorneys' fees, interest, and costs incurred in bringing the action. (*Id.*, ¶¶ 111–113).

5.      By Plaintiff's own calculations, he seeks at least $1,050,000 in monetary damages. Plaintiff estimates his damages under Mass. Gen. Laws ch. 212, § 3A as follows: more than $300,000 in documented lost wages and compensation to date; $500,000 in reasonably anticipated lost wages; and $250,000 in other documented damages, including forfeited stock options, emotional distress, reputational harm, and loss of employment opportunities. (Ex. 2).

## GROUNDS FOR REMOVAL

6.      Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

7.      This Court has original jurisdiction over the State Court Action pursuant to diversity-of-citizenship jurisdiction. Under 28 U.S.C. § 1332(a)(1), district courts "have original

Date Filed 10/9/2025 3:57 PM
Superior Court - Hampshire
Docket Number 2580CV00126

jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs," and is between "citizens of different States."

8.   It is undisputed that complete diversity of citizenship exists in the State Court Action.

9.   Benchling is a Delaware corporation and maintains its principal place of business and corporate headquarters in San Francisco, California. (Ex. 1, ¶ 4).

10.   Plaintiff is a citizen and resident of the state of Massachusetts. (Ex. 1, ¶ 3).

11.   In addition, it is undisputed that the State Court Action satisfies the amount-in-controversy requirement.

12.   Plaintiff's alleged damages far exceed the $75,000 jurisdictional threshold for diversity-of-citizenship jurisdiction. (Ex. 2). *See* 28 U.S.C. § 1446(c).

13.   Accordingly, this Court has jurisdiction over all the claims set forth in the Complaint and removal of the State Court Action to this Court is proper based on diversity-of-citizenship jurisdiction.

## REMAINING PROCEDURAL REQUIREMENTS

14.   Pursuant to 28 U.S.C. § 1446(a), Benchling files this Notice of Removal in the district court of the United States for the district and division within which the State Court Action is pending.

15.   Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders in the State Court Action (including the Summons and Complaint) are attached hereto as Exhibits 1–3. In addition, pursuant to L.R., D. Mass. 81.1(a), Benchling will file certified copies of all records and proceedings in the State Court Action within twenty-eight (28) days after filing this Notice of Removal.

16.    Plaintiff served Benchling with the Summons and Complaint on September 23, 2025. (Ex. 3). This Notice of Removal has been filed within thirty (30) days of the issuance of the Summons and Complaint to Benchling, and is therefore timely filed pursuant to 28 U.S.C. § 1446(b)(1).

17.    Pursuant to 28 U.S.C. § 1446(b)(2)(A), no other defendants have been properly joined and served in the State Court Action, and thus no other defendants must join in or consent to removal of the State Court Action.

18.    A copy of the Notice of Filing Notice of Removal, attached hereto as **Exhibit 4**, will be promptly filed with the clerk of the Hampshire County Superior Court and served on Plaintiff pursuant to 28 U.S.C. § 1446(d).

19.    Based on the foregoing, this Court has jurisdiction over the State Court Action pursuant to 28 U.S.C. § 1332(a)(1), and the State Court Action may be removed to this Court under 28 U.S.C. §§ 1441 and 1446.

**WHEREFORE**, Defendant Benchling, Inc. hereby respectfully removes the Hampshire County Superior Court State Court Action to the United States District Court for the District of Massachusetts.

Date Filed 10/9/2025 3:57 PM
Superior Court - Hampshire
Docket Number 2580CV00126

Dated: October 9, 2025

Respectfully submitted,

**BLETZER & BLETZER, P.C.**

*/s/ Conrad J. Bletzer, Jr.*
Conrad J. Bletzer, Jr., BBO No. 045760
300 Market Street
Brighton, MA 02135
617.254.8900
conrad@bletzerlaw.com

Shawn D. Fabian, Ill. Bar No. 6310637 (*pro hac
vice* admission pending)
Katherine Oblak, Ill. Bar No. 6307200 (*pro hac
vice* admission pending)
**SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP**
321 North Clark St., 32nd Floor
Chicago, Illinois 60654
312.499.6300
sfabian@sheppardmullin.com
koblak@sheppardmullin.com

*Attorneys for Defendant Benchling, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing NOTICE OF

REMOVAL was electronically filed with the Clerk of the Court and that a copy of the foregoing

SMRH:4914-8169-3295.4                -5-

Date Filed 10/9/2025 3:57 PM
Superior Court - Hampshire
Docket Number 2580CV00126

instrument was sent by first-class U.S. mail, postage prepaid, on October 9, 2025, addressed to the following parties:

Julian Ross

105 East Street, Apt. B

Hadley, MA 01035

jross2l@gmail.com

/s/ Conrad J. Bletzer, Jr.